IDEAL BASIC INDUSTRIES, INC., A CORPORATION, APPELLANT, V. JUNIATA FARMERS COOPERATIVE ASSOCIATION ET AL., APPELLEES.

289 N. W. 2d 192

Filed February 26, 1980. No. 42607.

Lyle E. Strom and C. L. Robinson of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellant.

Charles W. Hastings of Dunmire & Blessing, for appellees Mel Jarvis Constr. Co. and The American Ins. Co.

Heard before BOSLAUGH, MCCOWN, CLINTON, and WHITE, JJ., and WOLF, District Judge.

WHITE, J.

This is an appeal by the plaintiff, Ideal Basic Industries, Inc. (hereafter Ideal), from an order dismissing an action to foreclose a mechanic's lien. The parties were Mel Jarvis Construction Company, Inc. (hereafter Jarvis), Larry Lambrecht, doing business as Wood River Concrete Company (hereafter Lambrecht), and The American Insurance Company (hereafter American).

The essential facts are these. Juniata Farmers Cooperative Association entered into a contract with Farmland Industries, Inc. (hereafter Farmland), for the construction of a grain elevator at Hayland, Nebraska. Farmland, as general contractor, agreed to furnish all labor and material for the construction of a concrete grain elevator. Farmland entered into a subcontract with Jarvis. Jarvis agreed to furnish all the labor and materials for the excavation, the lower pits, tunnels, slabs, and to slip form the concrete grain elevator and annex. Jarvis solicited bids for concrete for the elevator project. Lambrecht submitted a bid and Jarvis accepted by issuing a standard purchase order notifying Lambrecht. Between April and July 1976 Lambrecht supplied mixed concrete to Jarvis. All the cement necessary for making the concrete was purchased from Ideal, plaintiff in this action, on an open account.

Initially, the concrete supplied to Jarvis was mixed and transported from Lambrecht's batching plant in Wood River, Nebraska. Ideal delivered the raw cement to the plant at Wood River where Lambrecht would transport these raw materials in a

mixing truck to the Hayland site. Approximately a month after Lambrecht started delivery of concrete to Jarvis, Lambrecht constructed a batching plant at the jobsite in Hayland. Ideal then delivered the cement to the Hayland batching plant. The cement involved in this case was delivered to the Hayland plant. Ideal does not seek recovery for any cement delivered to the Wood River plant.

Evidence was adduced to show Lambrecht supplied Jarvis with concrete from April 4, 1976, to July 1976. After two payments, a dispute arose and Jarvis stopped paying Lambrecht. Ideal contends it delivered $32,130 worth of cement to Lambrecht at the Hayland site for which it has not been paid.

On September 29, 1976, Ideal filed a mechanic's lien against Juniata Farmers Cooperative Association for $33,229.82, later amended to $32,130. In order to discharge the property from the lien, Jarvis, as principal, and American, as surety, filed a bond in the amount of $38,500 pursuant to section 52-121, R. R. S. 1943. Ideal filed a petition against Juniata Farmers Cooperative, Lambrecht, Jarvis, and American in an attempt to foreclose its lien. Juniata demurred to the plaintiff's petition and the demurrer was sustained. Jarvis and American denied the allegations of plaintiff's petition. Lambrecht cross-petitioned against Juniata, Jarvis, and American, claiming a lien upon the bond filed by Jarvis for the balance due from Jarvis for the sum of $41,316.17. Upon its own motion, the court consolidated the case of Ideal Basic Industries, Inc. v. Juniata Farmers Cooperative Association et al., with that of Larry Lambrecht, doing business as Wood River Concrete Company v. Mel Jarvis Construction Company, Inc., et al. By pretrial order and pursuant to the stipulation of the parties, the court ordered that the case of "Ideal Basic Industries, Inc. vs. Mel Jarvis Construction Company, Inc." be tried first. It is that suit which is now be-

fore the court.

Ideal assigns as error the court's finding that Ideal was not entitled to the protection of the mechanic's lien statutes; that the failure of Lambrecht to tag or designate his payments to plaintiff on open account barred plaintiff from enforcing its mechanic's lien; and that the trial court erred in holding Ideal was required to prove the value of cement actually incorporated into the elevator and in failing to find that Ideal proved the value of the cement incorporated into the elevator building. We shall discuss only the first assignment of error.

The controlling question for decision is whether the supplier of a supplier of materials to be used for the construction of a grain elevator is entitled to a claim of a lien under section 52-101, R. R. S. 1943. This section defines who is entitled to a mechanic's lien and for what a lien may be claimed. Durkee v. Koehler, 73 Neb. 833, 103 N. W. 767. We have said that one claiming a lien must clearly bring himself within the terms of the statute allowing a lien on real estate. Krotter & Sailors v. Pease, 161 Neb. 774, 74 N. W. 2d 538. The section reads in relevant part: "Any person who shall perform any labor or furnish any material, machinery, or fixtures, including gas and electric apparatus and lighting fixtures, whether detachable or undetachable, (1) for the construction, erection, improvement, repair, or removal of any house, mill, well, cistern, manufactory, building, or appurtenance * * * by virtue of an open running account or a contract or agreement, expressed or implied, with the owner thereof or his agents, shall have a lien to secure the payment of the same upon such * * * and the lot of land upon which the same shall stand or the work is performed, and such lien shall include the rental value of any equipment furnished."

In 53 Am. Jur. 2d, Mechanics' Liens, § 73, p. 585, it is stated: "Persons supplying materials to a ma-

terialman or a subcontractor must come clearly within the terms of the statute, or they can claim no lien. They are so far removed from the owner that the privilege of a lien is not often extended to them, and the plainest expressions of law must be used to entitle them to this remedy."

It is our view that section 52-101 et seq., R. R. S. 1943, provide a lien only to materialmen who supply directly to the owner of the realty, the contractor, or a subcontractor. Ideal sold its material directly to Lambrecht, looked to him for payment, and was directed by him as to the quantity of materials to be delivered and where and when such deliveries were to be made. Earl Barngrover, the Ideal sales representative, testified: "Q. Did you call on Mr. Lambrecht as a customer of Ideal? A. Yes, I did. Q. Did you make arrangements with Mr. Lambrecht for the sale of cement for the Hayland elevator job? A. Yes." The cement which was supplied by Ideal was done at the request of Lambrecht. Lambrecht was not the agent of the owner, or the contractor, or a subcontractor. Ideal argues that Lambrecht was a subcontractor because he was obliged, by contract, to mix all the cement required for the elevator and he performed that mixing on the jobsite. Although our statutes contain no precise definition of "subcontractor" or "materialman," these terms have been defined as follows: "* * * the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, *not that he enters upon the jobsite and does the construction there."* (Emphasis supplied.) 53 Am. Jur. 2d, Mechanics' Liens, § 72, p. 583.

It was stated in 57 C. J. S., Mechanics' Liens, § 89, p. 599, that a materialman is: "* * * a person who does not follow the business of building or contract-

ing to build homes for others, but who manufactures, purchases, or keeps for sale materials which enter into buildings, and who sells or furnishes such materials without performing any work or labor in installing or putting them in place, * * *."

Lambrecht's agreement with Jarvis was evidenced by a standard purchase order. Jarvis testified the purpose was "* * * to let him know that his quote has been accepted and that he will be the supplier on that particular project." It was Ideal's responsibility to furnish component parts to Lambrecht who manufactured them into a material which was supplied to the subcontractor. In turn, Jarvis used its own labor to incorporate the concrete into the elevator. Lambrecht was clearly a supplier of materials and not a subcontractor.

Ideal contends that the question of whether it supplied to a materialman or a subcontractor should not be of controlling significance. Rather, the critical factor is whether the materials are delivered directly to the jobsite. We are not persuaded by this argument. The cases which the plaintiff cite in support of this proposition involve a lien by a materialman for materials supplied to a general contractor and a subcontractor. Those persons are clearly protected by the statutes. See, The Wickes Corporation v. Frye, 202 Neb. 23, 273 N. W. 2d 663 (1979); Vince Kess, Inc. v. Krueger Constr. Co., 202 Neb. 673, 276 N. W. 2d 669 (1979). We would be engaging in judicial legislation to extend the protection of the mechanic's lien to one more remote than a materialman to a subcontractor. Ideal delivered the materials to the jobsite because Lambrecht constructed a batching plant at the Hayland site. The record indicates this was a matter of convenience and none of the parties were contractually obligated to deliver or manufacture the concrete at the jobsite. Merely delivering materials at the jobsite, with no contractual obligation to do so, does not warrant the exten-

sion of Nebraska's mechanic's lien statute.

Although this state has never considered the question, the precise issue involved has been considered by courts in other jurisdictions under similar statutory framework. Generally, in interpreting a mechanic's lien statute, courts have held the supplier of a supplier of construction materials to a contractor is not entitled to a lien. Ideal does not cite any decisions to the contrary. Ga.-Pacific Corp. v. Dan Austin Prop. Inc., 126 Ga. App. 191, 190 S. E. 2d 131, involved a mechanic's lien asserted by a materialman who furnished another supplier of construction materials to a contractor. Holding that the statute did not provide for a lien to a supplier of a supplier of construction materials, the Georgia Court of Appeals said if it had been intended to extend the terms of the lien to the supplier of a supplier, the General Assembly would have spelled this out in the statute. If we were to extend the terms of the statute to cover the plaintiff, it is conceivable that a manufacturer selling to a wholesaler who, in turn, sells to a retailer and who, in turn, sells to a contractor or subcontractor could also assert a lien if payments were not made all the way back up the line for the materials. That we do not conceive to be the legislative intent.

The Michigan court in Hart v. Reid, 243 Mich. 175, 219 N. W. 692, interpreted a statute similar to our mechanic's lien statute. In denying the lien of a person furnishing lumber to another materialman, the court stated: "It does not extend beyond its express terms, and cover a materialman who furnishes materials, in pursuance of a contract with another materialman who furnishes materials in pursuance of a contract with a subcontractor under the original contractor."

In Botzum Bros. Co. v. Brown Lumber Co., 150 N. E. 2d 485 (Ohio App., 1957), a supplier and two individuals contracted for the construction of a house.

The materials and plans for the home were to be furnished by Nu Homes Association and constructed on the property owned by the Sebastians. Certain materials were purchased by Nu Homes from The Brown Lumber Company, The J. P. Loomis Concrete & Supply Company, and Botzum Bros. Company. The Court of Appeals of Ohio held that the three suppliers could not assert a mechanic's lien. The court referred to the work of DeWitt on Ohio Mechanics' Liens, at section 14: " 'Reduced to its lowest terms, the statute provides that *every person who* does work or *furnishes* machinery, *material,* or fuel, for constructing or altering certain structures or improvements, *by virtue of a contract,* express or implied, *with the owner* of any interest in real estate, or his authorized agent, *and every* subcontractor, laborer, or *materialman furnishing* labor or *material* or fuel, *to each original contractor or any subcontractor,* in carrying forward such contract, *shall have a lien.' "  Botzum Bros. Co. v. Brown Lumber Co., *supra.*  The Ohio court held the statute could not be construed to provide protection to a materialman who was beyond the terms of the statute. See, also, Kingston Trust Company v. State, 291 N. Y. S. 2d 208, 57 Misc. 2d 55 (1968); Ronald A. Coco, Inc. v. St. Paul's Methodist Church, 78 N. M. 97, 428 P. 2d 636 (1967); Chesebro-Whitman Co., Inc. v. Edenboro Apts., Inc., 86 N. J. Super. 422, 207 A. 2d 186 (1965).

Ideal as a supplier of materials to a materialman is not within the class entitled to a lien under section 52-101 et seq., R. R. S. 1943. The decision of the trial court was correct and is affirmed.

AFFIRMED.