CHICAGO LUMBER COMPANY OF OMAHA,
A NEBRASKA CORPORATION, DOING BUSINESS AS
CHICAGO LUMBER COMPANY OF KEARNEY, APPELLANT, V.
JACK M. HORNER AND R. KAY HORNER,
THIRD-PARTY PLAINTIFFS, APPELLEES, V.
STEVEN J. MAZURKA AND LEE ANN MAZURKA,
THIRD-PARTY DEFENDANTS, APPELLEES.

317 N.W.2d 87

Filed March 19, 1982. No. 43835.

John T. Tarrell for appellant.

Ross, Schroeder & Fritzler for appellees.

Heard before KRIVOSHA, C.J., McCOWN, and HASTINGS, JJ., and FUHRMAN and CAPORALE, District Judges.

CAPORALE, J.

In this appeal from the denial of a mechanic's lien the plaintiff-appellant, Chicago Lumber Company, asserts (in summary) that the trial court erred (1) in finding the house was substantially completed more than 4 months prior to the filing of the liens, (2) in finding that materials furnished by the appellant and used in the construction of a basement closet were not part of the "contract" for materials existing between Steven J. Mazurka and appellant, and (3) in excluding from evidence a letter written by Mazurka to appellant, wherein Mazurka acknowledged the debt claimed by appellant and promised to pay it. We agree the trial court erred, and we reverse.

It is the duty of this court on appeal of an action in equity to try the issues de novo and to reach an independent conclusion without being influenced by the findings of the trial court, except to give weight to the fact that the trial court saw the witnesses and observed their demeanor while testifying. *Knoell Constr. Co., Inc. v. Hanson,* 209 Neb. 461, 308 N.W.2d 356 (1981). See, also, *Bonsall v. Sterrett,* 197 Neb. 753, 250 N.W.2d 910 (1977).

With the above rule in mind, we find that the appellant engages in the retail sale of lumber and other building materials. In May of 1977 Mazurka made arrangements for the construction of a new residential house in Kearney, Nebraska. He opened an account at Chicago Lumber Company to which the cost of construction materials would be charged as needed. Mazurka was not obligated to purchase any of his construction materials from the appellant; Chicago Lumber Company was to deliver only those materials ordered by Mazurka or his agents at a price specified in a lumber list.

The first materials were charged to the Mazurka account on May 17, 1977, and construction on the house started about that time.

Kim L. Summers, the contractor, apparently was released from his contract in October of 1977 because his work was completed. Thereafter, Mazurka and others performed work to finish the house. This house was the only building project in which either Mazurka or Summers was engaged. On October 13, 1977, Mr. and Mrs. Mazurka entered into a contract for the sale of the house to Jack M. and R. Kay Horner, appellees. As part of the purchase agreement, the Horners specified 12 items which were to be completed before closing the purchase; among them was the construction of a closet in the north end of the gameroom. It appears that the materials used for the construction of the closet were furnished by appellant lumber company, along with other materials purchased to complete the specified items of construction. On December 6, 1977, the closing took place, and, according to the Horners, everything in the house was done except the changing of two light fixtures.

Of the 141 invoices of the appellant, 7 totaling $543.78 in amount were incorporated into the house and are dated subsequent to November 14, 1977. However, there was no hiatus between those seven invoices and the preceding ones, particularly the prior eight invoices dated between October 31 and November 12, 1977, totaling $560.18.

On March 14, 1978, Chicago Lumber Company filed its mechanic's lien, with an affidavit of account attached thereto, in the amount of $17,211.75. The appellant alleges in its petition that payments were received from Mazurka totaling $9,019.51, and that the amount claimed under the lien should be reduced to $8,192.24.

In its order of April 2, 1980, the trial court found that the action against the Mazurkas as third-party defendants should be stayed because they had filed bankruptcy. This action, then, has proceeded only as be-

tween Chicago Lumber Company and the Horners.

The statutes applicable at the time of the transaction in question, since repealed by 1981 Neb. Laws, L.B. 512, are Neb. Rev. Stat. §§ 52-101 and 52-102 (Reissue 1978). Section 52-101 provides in relevant part: "Any person who shall perform any labor or furnish any material . . . (1) for the construction, erection, improvement . . . of any house . . . by virtue of an open running account or a contract or agreement, express or implied, with the owner thereof or his agents, shall have a lien to secure the payment of the same upon such house . . . ."

Section 52-102 provides in relevant part: "Any person or subcontractor who shall perform any labor for, or furnish any material . . . for any of the purposes mentioned in section 52-101 . . . who shall desire to secure a lien upon any of the structures mentioned in said section, may file a sworn statement of the amount due him from such contractor for such . . . material . . . together with a description of the land upon which the same was done or used, within four months from the performing of such labor or furnishing such material . . . ."

We have held that one who furnishes materials without performing any work or labor in installing them or putting them in place is a materialman and is given a lien under the provisions of §§ 52-101 et seq. because the materials furnished were used in the construction of the building or other structure. *Paxton & Vierling Steel Co. v. Barmore*, 187 Neb. 54, 187 N.W.2d 590 (1971); *Ideal Basic Industries, Inc. v. Juniata Farmers Coop. Assn.*, 205 Neb. 611, 289 N.W.2d 192 (1980). See, also, *Rosebud Lumber and Coal Co. v. Holms*, 155 Neb. 459, 52 N.W.2d 313 (1952).

We have also held that mechanic's lien statutes are cumulative and remedial in nature and require a liberal construction so as to effectuate their objects and purposes and protect all claimants within their scope as well as to promote substantial justice. *Rosebud Lumber and Coal Co. v. Holms, supra.* See, also, *Peters v.*

*Halligan,* 182 Neb. 51, 152 N.W.2d 103 (1967).

It is true that in *Occidental S. & L. Assn. v. Cannon,* 184 Neb. 659, 171 N.W.2d 166 (1969), there is language which states that after a contract for material is substantially completed there should be no unreasonable delay in filing a claim for a lien and the time for filing cannot be delayed by furnishing minor items of material. That language was used, however, in the context of a hiatus of at least 2 months between the furnishing of the last and the penultimate items. Language similar to that of *Occidental* is found in *Disbrow & Co. v. Peterson,* 136 Neb. 719, 287 N.W. 220 (1939), and *Gatchell v. Henderson,* 156 Neb. 1, 54 N.W.2d 227 (1952). However, *Disbrow* presented a 6-month hiatus prior to the furnishing of the last item and *Gatchell* involved the substitution of proper material in place of defective material. The lack of discontinuity in the supplying of materials by appellant distinguishes this case from *Occidental* and those of like genre.

With respect to the second assignment of error, we observe that a substantial, rather than a technical, view should be taken of the question whether a lien claim is founded on one or more contracts, and, where all the work done or materials furnished are under one continuing contract, or part of one continuous and connected transaction, or of a continuous and running account, a lien claim filed within the required time after the last item was done or furnished is sufficient as to all items. 57 C.J.S. *Mechanics' Liens* § 144 c. (1948).

To hold otherwise would seem to ignore our prior holdings that a materialman is given a lien because the material furnished was used in the construction. *Paxton & Vierling Steel Co. v. Barmore, supra; Ideal Basic Industries, Inc. v. Juniata Farmers Coop. Assn., supra.*

"An 'open running' account has been defined as one which is based upon a connected series of transactions, and which has no break or interruption. . . .

"An open account results where the parties intend that the individual items of the account shall not be

considered independently, but as a connected series of transactions, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original express or implied intention, there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits." 1 Am. Jur. 2d *Accounts and Accounting* § 4 at 373-74 (1962). See, also, *Occidental S. & L. Assn. v. Cannon, supra* (Newton, J., concurring); *Lewis v. Hiskey,* 166 Neb. 402, 89 N.W.2d 132 (1958).

In considering the question of a running account in *Rochester's Suburban Lbr. Co. v. Slocumb,* 282 Minn. 124, 130, 163 N.W.2d 303, 308 (1968), the court stated: "If, as here, there is a continuous dealing and a running account, and the work was done and materials were furnished at short intervals and were appropriate to the condition and progress of the building, a presumption arises that it was understood from the beginning that the claimants were to do the work or furnish the materials for construction of the building as the same would be required and in such case the date of the last item of the account is the date from which the limitation of the time of filing is to be taken." The court also stated at 129, 163 N.W.2d at 307: "If a materialman begins to furnish materials for the erection or repair of a building without any specific agreement as to the amount to be furnished, or the time within which they are to be furnished, but there is reasonable expectation that further material will be required of him and he is afterwards called upon from time to time to furnish the same, he is generally entitled to a lien as under an entire contract. Under those circumstances the time for the filing of a lien is the date the last item of the account is rendered."

That reasoning seems apt to the case at hand. The evidence is clear that materials furnished by the appellant

were all going for the same general purpose, the construction of a residential house. Although the materials were furnished over a period of time, there was a continuous running account upon which the materials were charged. The separate orders and delivery of goods should be construed as forming a single account for the purpose of establishing the lien. If the Horners were free to claim that the closet supplies were a separate contract, it would become difficult for a materialman to know when a building was completed and when the last item was furnished under a running account. Although the closet was not in the original plans furnished by Mazurka, the materials were ordered by the owners and were of a nature that it was reasonable to believe that they were to be used to complete the house.

In view of the above findings, consideration of the remaining assignment of error is not necessary.

The decree of the trial court is reversed with directions to enter a decree in favor of appellant in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.