BLUE TEE CORPORATION, A MAINE CORPORATION, DOING
BUSINESS AS BROWN STRAUSS STEEL, APPELLANT, V. CDI
CONTRACTORS, INC., ET AL., APPELLEES.

529 N.W.2d 16

Filed February 10, 1995.   No. S–93–411.

Walter R. Metz, Jr., of Schmid, Mooney & Frederick, P.C.,
for appellant.

Dwight E. Steiner, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee CDI Contractors.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

Blue Tee Corporation (Blue Tee) seeks $108,070.09 plus interest as consideration for structural steel supplied to Northwestern Steel & Supply Co. (Northwestern). Northwestern fabricated the steel for CDI Contractors, Inc. (CDI), the general contractor in the construction of a department store. Blue Tee sought foreclosure upon a bond issued by CDI in lieu of collateral to secure a construction lien filed by Blue Tee. CDI claimed that Blue Tee was not entitled to protection under the Nebraska Construction Lien Act, Neb. Rev. Stat. § 52–125 et seq. (Reissue 1993). The district court for Douglas County agreed and dismissed Blue Tee's petition with prejudice. Blue Tee appealed. For the reasons stated below, we reverse the judgment of the district court.

## FACTUAL BACKGROUND

The issue in this case is whether Northwestern was a subcontractor or a materialman for the purposes of the Nebraska Construction Lien Act. If Northwestern was a subcontractor for CDI, Blue Tee is entitled to protection under the Nebraska Construction Lien Act as a supplier to a subcontractor; if Northwestern was a materialman to CDI, Blue Tee is not entitled to a lien.

CDI was the general contractor for the construction of a department store—Dillard's at Oakview Mall in Omaha. CDI accepted Northwestern's bid to provide structural steel for the project. Northwestern ordered raw steel from Blue Tee. Blue Tee delivered the steel and billed Northwestern $108,070.09 for the material. The date of the last delivery was on or about November 1, 1990. The steel was fabricated by Northwestern off the construction site and was installed by Davis Erection Company.

According to Blue Tee's expert witness, John Rupprecht, steel fabrication is the process of cutting, drilling, plating, and

otherwise altering raw steel sections to exact specifications such that the sections may be assembled into the framework of a building. Rupprecht also stated that, as in this case, fabrication must be done in a steel fabrication facility and cannot be done at a jobsite. He testified that, after steel has been fabricated for a particular project, it has only scrap value if it is not incorporated into that project or an identical project. Rupprecht also stated that the work completed by Northwestern constituted a definite and substantial portion of the project. Upon cross–examination, Rupprecht admitted that fabrication of steel could be as simple as cutting a piece of steel to a certain length.

At trial, CDI introduced documents, such as Northwestern's contract bid proposal and joint checking authorizations, which stated that Northwestern was a materialman, not a subcontractor. CDI employees testified that CDI treated Northwestern as a materialman rather than as a subcontractor. As examples of this treatment, CDI cited the lack of not only insurance but also payment retainage agreements and workplace safety standards normally associated with subcontractor contracts. CDI also adduced evidence that CDI was not contacted by Blue Tee until more than 3 months after the last major delivery of steel from Blue Tee to Northwestern. By that time, CDI had paid to Northwestern all but $18,517 for the steel.

Northwestern failed to pay Blue Tee and filed for bankruptcy protection. Blue Tee filed a construction lien on the real estate. The district court found that Northwestern was a materialman and dismissed Blue Tee's petition for foreclosure with prejudice.

## ASSIGNMENTS OF ERROR

In appealing, Blue Tee assigns as error, in sum, the following acts of the district court: the dismissal of the petition, the finding that Northwestern was a materialman, and the failure to grant the requested relief including prejudgment interest.

## STANDARD OF REVIEW

An action to foreclose a mechanic's or construction lien is one grounded in equity. In an appeal of an equitable action, the appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial

court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Evans v. Engelhardt*, 246 Neb. 323, 518 N.W.2d 648 (1994); *Hulinsky v. Parriott*, 232 Neb. 670, 441 N.W.2d 883 (1989).

## ANALYSIS

The Nebraska Construction Lien Act allows the supplier to a subcontractor to file a construction lien. The act does not afford protection to the supplier of a supplier or materialman. A claimant of such a lien has the burden of proving that the statute providing for such procedure to perfect the same is intended to protect the claimant. *Id.*

This court has previously attempted to define the differences between a subcontractor and a materialman. We have stated:

"[T]he essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the jobsite and does the construction there."

(Emphasis omitted.) *Ideal Basic Industries v. Juniata Farmers Coop. Assn.*, 205 Neb. 611, 615, 289 N.W.2d 192, 195 (1980) (quoting 53 Am. Jur. 2d *Mechanics' Liens* § 72 (1970)). In *Chicago Lumber Co. v. Horner*, 210 Neb. 833, 836, 317 N.W.2d 87, 89 (1982), we said:

We have held that one who furnishes materials without performing any work or labor in installing them or putting them in place is a materialman and is given a lien under the provisions of [the Nebraska Construction Lien Act] because the materials furnished were used in the construction of the building or other structure.

If we were to apply the rule in *Chicago Lumber Co.* to this case, Northwestern would be entitled to a lien as a materialman but Blue Tee would be considered a supplier to a materialman, and would not be granted protection under the Nebraska

Construction Lien Act.

The trial court held, and CDI argues, that the ruling in *Paxton & Vierling Steel Co. v. Barmore*, 187 Neb. 54, 187 N.W.2d 590 (1971), is controlling. In that case we held, without explanation, that a steel fabricator is a materialman. That the steel fabricator was held to be a materialman was not significant to the outcome of that case and was not contested by the parties. *Paxton & Vierling Steel Co.*, therefore, is instructive, but not binding, precedent.

In *Ideal Basic Industries, Inc.*, also relied on by the trial court, we held that a concrete manufacturer who did not install the concrete but only supplied the concrete to a general contractor who installed it was a materialman, not a subcontractor. In that case, the status of the middleman was in issue. However, the middleman produced concrete, a fungible commodity not specifically manufactured for a particular job.

Other jurisdictions have dealt directly with the question of whether a fabricator of unique building material is a subcontractor or materialman. The trial court cited *Weyerhaeuser Co. v. Twin City Millwork Co.*, 291 Minn. 293, 191 N.W.2d 401 (1971), in its order. In *Weyerhaeuser Co.*, the Supreme Court of Minnesota stated that, in determining the status of a middleman who fabricates specialized material for a construction project but does not install the material, "each case must hinge on the totality of the surrounding circumstances and none lends itself to hard–and–fast rules which may be inflexibly applied." *Id.* at 294–95, 191 N.W.2d at 402. The court also stated that a prime contractor should not be liable to suppliers when the contractor has no notice of the supplier's participation in the project. The court held that a manufacturer of unique doors was a subcontractor because the prime contractor, by the nature of the plans for the project, had notice that the doors would require custom fabrication.

More recently, the Supreme Court of New Mexico stated four factors that it would consider in determining the status of a middleman. In *Vulcraft v. Midtown Business Park, Ltd.*, 110 N.M. 761, 800 P.2d 195 (1990), a case nearly identical to the case before this court, the trial court granted a prime contractor's motion for summary judgment in defense of a steel

supplier's claimed materialman's lien. The appellate court found that the status of the steel fabricator was a genuine issue of material fact and reversed the trial court. In its ruling, the appellate court found that the status of the fabricator could be determined by weighing (1) whether the fabrication was built according to specific plans, (2) whether the actual labor performed was substantial in relation to the material supplied, (3) whether the custom in the trade denotes the fabricator as a subcontractor or a materialman, and (4) the intent of the parties to the contract regarding subcontractor status.

The object of the mechanic's lien being to secure the claims of those who have contributed to the erection of a building, it should receive the most liberal construction to give full effect to its provisions. *Vince Kess, Inc. v. Krueger Constr. Co.*, 202 Neb. 673, 276 N.W.2d 669 (1979).

The rules thus far developed, in *Chicago Lumber Co. v. Horner*, 210 Neb. 833, 317 N.W.2d 87 (1982) (material), and *Ideal Basic Industries, Inc. v. Juniata Farmers Coop. Assn.*, 205 Neb. 611, 289 N.W.2d 192 (1980) (concrete), while helpful, did not deal with unique goods which had to be customized as in the instant case.

As proof of Northwestern's status as a subcontractor, Blue Tee argues that Northwestern meets the definition of a subcontractor described in *Ideal Basic Industries, Inc.* Blue Tee elicited expert testimony that Northwestern's work on the steel framework was a definite and substantial part of the building. This point was undisputed. Blue Tee also made repeated references to the exact standards required by CDI in its specifications for the fabricated steel. Expert testimony showed that fabricated steel is a unique product and, once fabricated, has only scrap value if not incorporated into the planned project.

The evidence, considered with the mandate that the law favors protection of those who contribute labor to an improvement, supports a finding that Northwestern was a subcontractor for purposes of the Nebraska Construction Lien Act.

We acknowledge that the evidence shows that Northwestern fabricated steel and supplied it to CDI, which had it installed

by Davis Erection Company. We do not find the fact that Northwestern did not install the steel dispositive of Northwestern's status. In *Chicago Lumber Co.*, this court stated that installation of materials was the criterion that separated subcontractors from suppliers. The supplier of materials in *Chicago Lumber Co.*, however, did not custom–manufacture the material which was supplied to the prime contractor in accord with the prime contractor's plans. The purposes of the Nebraska Construction Lien Act would not have been furthered in *Chicago Lumber Co.* by a finding that a supplier of stock–in–trade material was a subcontractor.

Additionally, CDI argues that uncontradicted testimony stated that the custom in the trade designates steel fabricators as materialmen and that the documents in evidence show that the parties intended Northwestern to be considered a materialman. While the intent of the parties and the custom in the trade are factors to be considered in determining status, neither factor is so compelling that we are willing to minimize the value of the labor Northwestern contributed to the project.

In the instant case, Northwestern cut, drilled, welded, and otherwise fabricated raw steel to the exact specifications required by CDI. Expert testimony established that Northwestern's work on the project constituted a substantial share of the construction of the department store. Despite the evidence that Northwestern was a materialman, we recognize the contribution of labor as the foremost indicium of subcontractor status.

Blue Tee has the burden of proving that Blue Tee is afforded protection under the Nebraska Construction Lien Act. We find that Blue Tee has met this burden by proving that Northwestern was a subcontractor and not a supplier. Therefore, we find that Blue Tee is entitled to a lien.

Because we find that Blue Tee is entitled to a lien, we must consider Blue Tee's claim that it is entitled to interest on the amount due it from the date 30 days after Blue Tee's last steel delivery. The trial court did not address this issue. Blue Tee claims that, under § 52–136, it should be awarded interest as described in its contract with Northwestern. CDI argues that Blue Tee should not receive interest because Blue Tee's claim

was disputed, and therefore unliquidated, and because Blue Tee failed to claim prejudgment interest in the manner dictated by Neb. Rev. Stat. § 45–103.02 (Reissue 1993).

Prejudgment interest is recoverable upon the foreclosure of a mechanic's lien. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). However, such interest is available only when the claim is liquidated, that is, when there is no reasonable controversy either as to the plaintiff's right to recover or as to the amount of such recovery. *Id.* There must be no dispute either as to the amount or as to the plaintiff's right to recover. *Id.*

The issue in this case, whether Northwestern was a subcontractor, presented a reasonable controversy regarding Blue Tee's right to recovery. The controversy rendered Blue Tee's claim unliquidated and precludes an award of prejudgment interest. We need not address the other issues presented by the request for the interest.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in favor of Blue Tee in its foreclosure proceeding, in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.