OMAHA CONSTRUCTION INDUSTRY PENSION PLAN AND
OMAHA CONSTRUCTION INDUSTRY HEALTH
AND WELFARE PLAN, APPELLANTS, V.
CHILDREN'S HOSPITAL, APPELLEE.

642 N.W.2d 849

Filed April 2, 2002. No. A-00-1031.

Ronald L. Comes and Aaron A. Clark, of McGrath, North, Mullin & Kratz, P.C., for appellants.

Wayne J. Mark and Mary M. Carnazzo, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

INBODY, Judge.

## INTRODUCTION

The Omaha Construction Industry Pension Plan and the Omaha Construction Industry Health and Welfare Plan (the Plans) appeal from the Douglas County District Court's dismissal of their amended petition for failure to state a cause of action. For the reasons recited herein, we reverse, and remand for further proceedings.

## STATEMENT OF FACTS

Children's Hospital (Children's) and Kiewit Construction Company entered into a real estate improvement contract for the improvement of land owned by Children's. Kiewit Construction subcontracted with Borchman Construction Company (Borchman) to construct certain improvements upon land owned by Children's. Borchman hired several union members to perform the work, and Borchman, as part of the total compensation to be

paid to the union employees, was responsible for paying contributions to the Plans at a specified rate. The Plans are pension and health and welfare plans which represent members of various unions, including employees of Borchman.

Borchman and the union workers completed the work on Children's property around October 11, 1998. Although Borchman calculated and reported the hours worked by the union members to the Plans, Borchman did not make the required contributions to the Plans due to financial difficulties, which ultimately led Borchman to file for bankruptcy.

On December 23, 1998, the Plans filed a construction lien against the Children's property in the amount of $9,128.40, which is the amount of the unpaid contributions. The Plans filed a petition to foreclose the lien on November 18, 1999, which was amended on March 10, 2000. Children's filed a demurrer, which was sustained by the district court, and upon the court's finding that the petition could not be amended to state a cause of action, the amended petition was dismissed. The Plans have timely appealed to this court.

## ASSIGNMENTS OF ERROR

The Plans assign and argue that the district court erred (1) in finding that the amended petition did not state a cause of action and in sustaining Children's demurrer and, in the alternative, (2) in concluding that the amended petition could not be further amended to state a cause of action.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court is required to accept as true all the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996). An order sustaining a demurrer will be affirmed if any one of the grounds on which it was asserted is well taken. *Cole v. Wilson*, 10 Neb. App. 156, 627 N.W.2d 140 (2001).

The determination of whether a cause of action has been stated in the petition is a question of law regarding which the appellate court has an obligation to reach a conclusion

independent of that of the lower court. *Nebraska Beef v. Universal Surety Co.*, 9 Neb. App. 40, 607 N.W.2d 227 (2000).

## ANALYSIS

The Plans contend that the district court erred in finding that the amended petition failed to state a cause of action. In order to make this determination, we must address (1) whether the union employees of a subcontractor who furnished labor during construction upon real property may file a construction lien against the property owner; (2) if the union employees of the subcontractor may file a construction lien, do the Plans have standing to file a construction lien on behalf of the union employees of the subcontractor against the property owner to recover unpaid contributions to the Plans by the subcontractor; and (3) if the Plans have standing, did their petition state a cause of action.

*Right of Union Employees to File Lien.*

The basis for this action is the premise that trustees are assignees of the subcontractor's employees who have the right to file a construction lien for nonpayment of wages by the subcontractor. Thus, the first question we must address is whether an employee of a subcontractor may file a lien against the property owner. The Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 through 52-159 (Reissue 1998), is an almost verbatim version of article 5 of the Uniform Simplification of Land Transfers Act (Uniform Act). Although the Nebraska Legislature did not adopt the introductory comments of the Uniform Act, we nonetheless look to them in order to understand the Nebraska Construction Lien Act. For purposes of our discussion, we note that the drafters of the Uniform Act, like the Legislature, adopted the title "Construction Liens" in lieu of the synonymous term "Mechanics' Liens." Article 5, 14 U.L.A. 308 (1990). See, also, § 52-125.

The introductory comments to the Uniform Act indicate that it was passed in order to promote uniformity among the mechanic's lien laws of the various states, and the act allows any person, no matter how far removed from the contracting owner, to file a lien for services or materials furnished pursuant to a real estate improvement contract. Pursuant to the Nebraska Construction Lien Act, a person who furnishes services or materials under a

real estate improvement contract may file a construction lien to secure payment of the contract price. § 52-131. There is no language which prohibits employees of a subcontractor from filing a construction lien. The only requirement is that the claimant, or his or her successor in interest, must have furnished services or materials pursuant to a real estate contract.

Only a few states have reported cases on this issue, and through our examination, we have ascertained that only Hawaii treats subcontractors in a manner similar to Nebraska. Hawaii's mechanic's lien law provides that "[a]ny person . . . furnishing labor or material in the improvement of real property shall have a lien . . . for the price agreed to be paid." Haw. Rev. Stat. § 507-42 (1993). Similarly, the Nebraska Construction Lien Act provides that "[a] person who furnishes services or materials pursuant to a real estate improvement contract has a construction lien, only to the extent . . . to secure the payment of his or her contract price." § 52-131.

The Plans cite *Blue Tee Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 529 N.W.2d 16 (1995), in support of their contention that the Borchman employees could file a lien on their own behalf and that thus, the Plans could be their assignees. In *Blue Tee Corp.*, CDI was the general contractor for the construction of a store at a shopping mall. After CDI accepted the bid of a company to provide structural steel for the project, that company ordered and received the steel from Blue Tee. *Id.* The steel was fabricated offsite, and an erection company installed the fabricated steel on the construction site. *Id.* Blue Tee filed a construction lien on the property. *Id.* The Nebraska Supreme Court held that under the Nebraska Construction Lien Act, a supplier to a subcontractor is allowed to file and enforce a lien against the property owner, but a supplier to a supplier or materialman is not allowed to file a lien against the property owner. *Id.*

In the instant case, Borchman was hired as a subcontractor to perform construction on Children's property. Borchman in turn hired union employees to perform the work upon Children's property. Under *Blue Tee Corp., supra*, although a supplier to a supplier or materialman could not file a lien, a supplier to a subcontractor could. We conclude that there is substantially no difference in the relationship of the union employees of a subcontractor to

the property owner than the relationship between a supplier to a subcontractor and the property owner. Thus, under the analysis in *Blue Tee Corp., supra,* the Borchman employees are not denied the right to file a lien under the Nebraska Construction Lien Act.

*Standing of Plans.*

Next, we must address whether the Plans have standing to file and enforce a lien on behalf of the employees. Other jurisdictions which have confronted this same type of action have uniformly held that health and welfare and pension plans may assert and enforce a lien on behalf of employees-beneficiaries who contributed labor or material during construction. See, *United States v. Carter,* 353 U.S. 210, 77 S. Ct. 793, 1 L. Ed. 2d 776 (1957); *Hawaii Carpenters' Trust Funds v. Aloe Development Corp.,* 63 Haw. 566, 633 P.2d 1106 (1981); *Dobbs v. Knudson, Inc.,* 292 N.W.2d 692 (Iowa 1980); *National Elec. Indus. v. Beth. Steel,* 296 Md. 541, 463 A.2d 858 (1983).

Despite the fact that some of these cases were governed by the federal law known as the Miller Act, 40 U.S.C. §§ 270a through 270d (1994), they are nonetheless persuasive authority, because the purpose behind the Miller Act and the purpose behind the Nebraska Construction Lien Act are the same, which is to protect those who furnish services or materials during construction. Further, the Miller Act and the Nebraska Construction Lien Act are also similar in that each allows persons who have furnished labor or materials under a real estate improvement contract to assert a lien. See, § 270b(a); § 52-131(1). Additionally, the Miller Act requires a contractor to obtain a bond from a surety company, and the Nebraska Construction Lien Act permits the property owner or the prime contractor to obtain a bond from a surety company. See, § 270a; § 52-141. The Miller Act provides that "[b]efore any contract for the construction . . . is awarded to any person, such person shall furnish to the United States [a] performance bond [and a] payment bond . . . for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract . . . ." § 270a. Under the Nebraska Construction Lien Act, the surety company is obligated, to the extent of the penal sum of the bond, to pay all sums due to construction lien claimants other than the prime contractor for

services and materials supplied pursuant to the contract under which the lien would otherwise arise. § 52-141. Both are using a surety bond to protect the interest of the property owner from being subject to a construction lien.

■ In *United States v. Carter, supra,* Carter entered into a contract with the United States for the construction of various buildings at Air Force bases in California. Although Carter was obligated by collective bargaining agreements negotiated between the local union which represented construction workers and several associations of employers to pay the trustees of a health and welfare fund contributions based upon the hours each employee worked, it failed to make the required contributions to the fund. The U.S. Supreme Court stated that the Miller Act was intended to have a liberal construction in order to effectuate Congress' intent to protect persons who supplied labor and materials for the construction of federal buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings. *Id.* The Court rejected an argument that the trustees were not persons who furnished labor or material and thus were not entitled to recover, stating:

> If the assignee of an employee can sue on the bond, the trustees of the employees' fund should be able to do so. Whether the trustees of the fund are, in a technical sense, assignees of the employees' rights to the contributions need not be decided. Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment.

353 U.S. at 219-20.

In *Dobbs v. Knudson, Inc.,* 292 N.W.2d 692 (Iowa 1980), a health, welfare, and pension trust filed public improvement liens against a surety after subcontractors on public improvement projects failed to make required contributions to the trust based on the hours worked by the subcontractor's employees. The Supreme Court of Iowa held that the employees, by their labor performed for the subcontractors, earned the right to have contributions paid to the trusts and that the trusts could make claims for unpaid sums which subcontractors were obligated to pay for their employees.

Further, the Hawaii Supreme Court and the Maryland Court of Appeals have reached the same result in cases involving trusts actions against property owners. In *Hawaii Carpenters' Trust Funds v. Aloe Development Corp.*, 63 Haw. 566, 633 P.2d 1106 (1981), the Supreme Court of Hawaii held that the trustees of an employee benefit trust fund could, in order to enforce the employer's obligation to make contributions to the fund, claim a mechanic's lien on real property that was improved through the employees' labor. The court also determined that the agreed-upon price for the labor of the employees-beneficiaries would not be deemed paid in full until the trust fund contributions were received. *Id.*

In *National Elec. Indus. v. Beth. Steel*, 296 Md. 541, 463 A.2d 858 (1983), a subcontractor which was hired by a general contractor to perform electrical work failed to make required contributions to health, welfare, pension, and annuity funds based upon the number of hours worked by each employee. The funds sued the property owner to enforce a mechanic's lien on the portion of the property where the subcontractor's employees had performed work. The Maryland Court of Appeals held that the trust funds had standing to file a petition on behalf of individual employees and also had standing to file petitions as assignee of the individual employees.

In sum, the aforementioned cases have held that health, welfare, and pension funds may assert and enforce a lien on behalf of the employees-beneficiaries who contributed labor or material during construction. Based upon our examination of the jurisprudence from other jurisdictions and our reading of the Nebraska Construction Lien Act, we determine that the Plans may, on behalf of the union employees, assert a construction lien against Children's.

### Stating Cause of Action.

After determining that the Plans have standing to assert and enforce a lien on behalf of the union employees, we turn to the issue of whether the Plans state a cause of action in their petition.

When reviewing an order sustaining a demurrer, an appellate court is required to accept as true all the facts which are well pled, together with the proper and reasonable inferences of law

and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996). Under the Nebraska Construction Lien Act, a claimant is any person who, under the act, has a right to a lien upon real estate, including his or her successor in interest. § 52-127(1). A person who furnishes services or materials under a real estate improvement contract has a construction lien only to the extent to secure payment of the contract price. § 52-131. The contract price is the amount agreed upon by the contracting parties for the performance of services and furnishment of materials. § 52-127(2).

In the present case, the Plans alleged in their petition that Borchman was hired as a subcontractor to make various improvements upon land owned by Children's; Borchman then hired various union employees and was bound by a collective bargaining agreement to make contributions as part of the total compensation to the Plans based upon the number of hours worked by each employee; Borchman failed to make these contributions, and the Plans, based upon the authority conferred upon them to exercise and enforce the rights of the union members including the right to take any "legal action to enforce payment" of unpaid contributions, filed a construction lien and sought to foreclose upon the construction lien.

In the present case, there is no express contract between Children's and the union employees. However, in *Sorenson v. Dager*, 8 Neb. App. 729, 601 N.W.2d 564 (1999), the court held that where a property owner hired a general contractor to build the property owner's home and the general contractor hired a subcontractor to frame the home, the subcontractor could assert and foreclose a lien against the property owner in order to recover the reasonable value of the labor and materials furnished by his crew during construction. Further, § 52-136(1)(b) provides that "the lien of a claimant other than a prime contractor is for the amount unpaid under the claimant's contract." Thus, because the Borchman employees are lien claimants other than the prime contractor who have not received the full amount of their contract price, they may file a lien under the Nebraska Construction Lien Act.

■ The object of a mechanic's lien being to secure the claims of those who have contributed to the erection of a building, it should receive the most liberal construction to give full effect to its provisions. *Blue Tee Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 529 N.W.2d 16 (1995). Therefore, under a liberal construction of the Nebraska Construction Lien Act, we find that the Plans stated sufficient facts to state a cause of action and hold that the district court erred in sustaining Children's demurrer based upon a finding that the Plans failed to state a cause of action.

## CONCLUSION

For the reasons stated above, we find that the district court erred in finding that the Plans did not state a cause of action. Therefore, we reverse the district court's finding and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.