ACTION HEATING & AIR CONDITIONING, INC., APPELLANT, V. KEN PETERSEN, DOING BUSINESS AS KEN PETERSEN, BUILDER, APPELLEE; MOHAMMED H. SIDDIQ ET AL., GARNISHEES-APPELLEES.
ACTION PLUMBING, INC., APPELLANT, V. KEN PETERSEN, DOING BUSINESS AS KEN PETERSEN, BUILDER, APPELLEE; MOHAMMED H. SIDDIQ ET AL., GARNISHEES-APPELLEES.

429 N.W.2d 1

Filed September 16, 1988.    Nos. 86-1031, 86-1032.

John Tavlin for appellants.

John P. Glynn, Jr., for garnishees-appellees.

Boslaugh, Caporale, and Grant, JJ., and Buckley, D.J., and Colwell, D.J., Retired.

Boslaugh, J.

The plaintiffs, Action Heating & Air Conditioning, Inc., and Action Plumbing, Inc. (hereafter Action), have appealed from the orders of the district court affirming judgments of the county court finding that the garnishees, Mohammed H. Siddiq and Hayat Y. Hanafi, were not indebted to the defendant, Ken Petersen, doing business as Ken Petersen, Builder (hereafter Petersen), and that the garnishees be discharged from further proceedings.

On April 10, 1984, garnishees entered into a contract with Petersen in which Petersen, as prime contractor, agreed to construct a residential duplex on real estate owned by garnishees in Lincoln, Nebraska, for $124,000. Petersen completed construction of the duplex in December 1984. On December 11, 1984, Siddiq issued a check to Petersen in the amount of $6,000.

In late December 1984, Pella Products, a subcontractor, informed Siddiq that it had not been paid by Petersen. Siddiq then contacted Petersen, who confirmed that Pella had not been paid. Siddiq contacted one or two other suppliers and discovered that they also had not been paid by Petersen. Siddiq contacted his attorney, who advised him to stop payment on the check. Siddiq issued a stop payment order, which was effective. At the time he issued the stop payment order, Siddiq had not received any notice of lien liability. There was a balance of $9,600 unpaid on the contract, including the $6,000 not paid under the stop payment order.

Garnishees then notified all subcontractors that $9,600 remained unpaid under the contract, and strongly urged each of them to contact an attorney. Thereafter, mechanics' liens in the total sum of $37,211.81 were filed against the real estate, including liens filed on February 7, 1985, by Action Heating & Air Conditioning in the amount of $3,712.58 and by Action

Plumbing in the amount of $7,072.71.

On July 24, 1985, Action filed petitions in the county court for Lancaster County asking for judgments against Petersen in the amounts of $3,712.58 and $7,072.71. On August 19, 1985, Action obtained default judgments against Petersen for these amounts.

On October 3, 1985, Action filed garnishment affidavits and interrogatories directed against garnishees, which were served on October 6, 1985. Garnishees responded that they had no liability to Petersen. Action filed petitions for determination of liability of garnishees on October 22, 1985. Garnishees filed answers admitting there was a contract between garnishees and Petersen and that $9,600 remained unpaid. The answers alleged that garnishees had discovered in mid-December 1984 that Petersen was not paying the subcontractors; that since January 4, 1985, construction liens totaling $37,311.81 had been filed against garnishees' real estate; that garnishees were protected party contracting owners within the meaning of the Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 1984); and that garnishees hold the $9,600 for the benefit of the subcontractors and not for the benefit of Petersen.

After a consolidated trial, the county court found that Petersen was not entitled to the money held by garnishees and that the claim of a judgment creditor (Action) against a garnishee can rise no higher than that of the principal debtor. The county court declined to base its decisions on the Nebraska Construction Lien Act and stated that "a good deal more evidence is necessary before any court can proceed to any kind of a just resolution under the Construction Lien Act." Apparently, the court based its decisions on the fact that Petersen agreed to pay all labor and material costs and had failed to complete the structure on or before September 15, 1984, as provided in the contract.

Action appealed to the district court, where the judgments were affirmed. The district court found that garnishees were protected party contracting owners within the meaning of §§ 52-128, 52-129, and 52-136 of the Nebraska Construction Lien Act. It further found that Petersen had failed to pay the

subcontractors; that subcontractors' liens in excess of the remaining balance due Petersen from garnishees had been filed; and that under the Nebraska Construction Lien Act, Petersen could not recover the balance due from garnishees. Therefore, Action, having no greater rights than Petersen, was not entitled to garnish the funds held by garnishees.

Action has now appealed to this court, where the cases have been consolidated for briefing and argument. Garnishment is a legal, not an equitable, remedy. The factual findings of the trial court in a law action tried without a jury have the effect of a finding by a jury and, on appeal, will not be set aside unless clearly wrong. *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987).

Action's first assignment of error relates to the sufficiency of the answers filed by garnishees. Action contends that since the answers of the garnishees did not plead any defense to a claim for damages for breach of contract by Petersen against them, the county court erred in basing its decisions on that ground.

The district court found that the Nebraska Construction Lien Act provided a defense to Action's attempted garnishments. Action also contends that the answers did not properly raise this defense.

The answers alleged that garnishees were the record owners of the real estate in question, that they entered into a contract with Petersen for construction of a residential duplex which was completed on or about December 28, 1984; that they were protected party contracting owners within the meaning of the Nebraska Construction Lien Act; that they learned in mid-December of 1984 that Petersen had not paid the subcontractors; that at that time there remained $9,600 unpaid on the general contract; that since that date garnishees had made no further payment to Petersen or any of the subcontractors; that garnishees notified all subcontractors of Petersen's default; that since January 4, 1985, construction liens totaling $37,211.81 had been filed against the real estate; that they held the sum of $9,600 for the benefit of subcontractors and not for the benefit of Petersen; and that by operation of law, the sum of $9,600 was not due Petersen.

"It is not necessary to state a defense in any particular form

so long as the facts supporting the assertion are stated." *Cass Constr. Co. v. Brennan*, 222 Neb. 69, 73, 382 N.W.2d 313, 317 (1986). Although perhaps not a model of pleading, there were sufficient facts pleaded in the answers to show that the garnishees were not indebted to Petersen.

In their second assignment of error, Action contends that the provisions of the Nebraska Construction Lien Act do not provide garnishees with a defense for nonpayment of the balance due under their contract. Specifically, Action contends that there is no provision in the act which exempts or holds in abeyance the obligation of a protected party contracting owner to pay the contractor on the prime contract.

The stated purpose of the Nebraska Construction Lien Act is to create and provide for the attachment and enforceability of a lien against real estate in favor of a person furnishing services or materials under a real estate improvement contract. § 52-126. The provisions of § 52-136 make it clear that a prime contractor is not entitled to payment from the owner until the liens of the subcontractors are satisfied. Under § 52-136(1)(a), the lien of a prime contractor is for the unpaid part of his or her contract price. Section 52-136(3) states that the lien of a claimant is reduced by the sum of the liens of claimants who claim through him or her. The comments to the Uniform Simplification of Land Transfers Act, on which the act appears to have been based, explain that

> [t]he owner's liability to a prime contractor is reduced by the amounts the owner pays to claimants claiming through that contractor. While the statute does not explicitly state that payments made by an owner to discharge liens of claimants other than the prime contractor go toward reducing the owner's contractual liability to the prime, it does state that the lien of the prime is reduced by the sum of the liens of claimants who claim through him. The clear implication of that rule is that the owner's personal liability to the prime is also discharged.

Unif. Simplification of Land Transfers Act § 5-206, comment 2, 14 U.L.A. 295 (1980).

The lien liability of a protected party contracting owner is the prime contract price minus the amount of payments properly

made. § 52-136(5). One way in which a payment is properly made on the prime contract is when it is made in good faith before the receipt by the contracting owner of a notice of lien liability. § 52-136(5)(a). The lien of a claimant (e.g., the subcontractor) other than that of the prime contractor is for the lesser of (1) the amount unpaid under the claimant's contract or (2) the amount unpaid under the prime contract at the time the contracting owner receives the claimant's notice of lien liability. § 52-136(2). If the contracting owner's lien liability under the prime contract is less than the sum of the claims of all claimants, then lien claimants whose liens attach at different times have liens in the order of attachment until the contracting owner's liability is exhausted. § 52-136(4). Therefore, the act has the effect of excusing a contracting owner's performance under the prime contract when the amount of the liens exceeds the amount of the contracting owner's lien liability.

The remaining assignments of error can be consolidated into whether there was sufficient evidence for the court to find that garnishees were not indebted to Petersen for the $9,600 unpaid on the contract.

Action's claims as a judgment creditor of Petersen against a garnishee can rise no higher than that of the principal debtor (Petersen). *Darr v. Long*, 210 Neb. 57, 313 N.W.2d 215 (1981); *Smith v. Brooks*, 154 Neb. 93, 47 N.W.2d 389 (1951). The test in determining liability of the garnishee to the garnisheeing plaintiff is whether or not the facts would support a recovery by the principal defendant against the garnishee. *Darr v. Long, supra*.

The answers denied that the garnishees were indebted to Petersen. The contract clearly provided that Petersen would "pay for all labor, material costs," etc. The evidence is abundant that Petersen failed to pay in excess of $50,000 of the labor and material costs. The evidence supports the finding that the garnishees were not indebted to Petersen.

The judgments are affirmed.

AFFIRMED.