LON SORENSON, DOING BUSINESS AS SORENSON CONSTRUCTION, APPELLANT, V. JAMES DAGER AND GINGER SANDERS DAGER, HUSBAND AND WIFE, AND NORWEST BANK NEBRASKA, N.A., A NEBRASKA BANKING CORPORATION, APPELLEES.

601 N.W. 2d 564

Filed October 12, 1999.   No. A-98-628.

Jane F. Langan, of Rembolt Ludtke & Berger, for appellant.

J. Michael Rierden for appellees James Dager and Ginger Sanders Dager.

HANNON, MUES, and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Lon Sorenson (Sorenson), doing business as Sorenson Construction, appeals from a January 28, 1998, order of the district court for Lancaster County, denying his request to foreclose his construction lien on property owned by James Dager (Dager) and Ginger Sanders Dager, and Norwest Bank Nebraska, N.A. (Norwest). For the reasons set forth below, we reverse, and remand with directions.

## BACKGROUND

On April 9, 1996, Sorenson filed a petition for foreclosure of a construction lien under the Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 1998). In Sorenson's petition, he alleged that he is an individual doing business as Sorenson Construction and that the Dagers are owners of real property located at 2525 Ridge Road, Lincoln, Nebraska. Sorenson alleged that he contracted with Michael Niemeyer, doing business as Mike's Custom Homes & Remodels, to furnish materials and services with respect to the

Dagers' property. Sorenson alleged that Niemeyer failed to pay him $22,668.25. Sorenson alleged that he had not pursued a proceeding at law to recover the amount owed.

Sorenson requested that the district court enter a decree of foreclosure directing that the Dagers' property be sold and the proceeds applied to satisfy his lien. In addition to recovering the $22,668.25, Sorenson requested the reasonable costs of abstracting the property and costs of his action.

On July 19, 1996, Sorenson filed a motion for default judgment against Norwest because Norwest had failed to appear or otherwise plead within 30 days. The trial court subsequently granted Sorenson's motion for default judgment against Norwest.

On December 9, 1996, the Dagers filed an answer and counterclaim. In the Dagers' answer, they requested that Sorenson's petition be dismissed with prejudice. In their counterclaim, the Dagers stated that because Sorenson failed to complete the framing on their house, they were required to have Niemeyer complete the work. The Dagers stated that this cost them an additional $26,246 and that such amount should be set off against the amount requested by Sorenson. The Dagers also alleged that Sorenson and his employees performed framing work which was faulty and unworkmanlike and that such work caused several delays in the construction of their house.

On December 16, 1996, Sorenson filed a reply and answer, which set out several affirmative defenses to the Dagers' counterclaim and requested that the Dagers' counterclaim be dismissed with prejudice.

Trial was held on October 9, 1997. The evidence presented at trial shows the following: In 1991 or 1992, Dager contacted Niemeyer, a general contractor, and asked him generally if he was interested in helping Dager build his new house. In late 1994 or early 1995, Dager and Niemeyer entered into more serious discussions. At that time, Dager requested that Niemeyer solicit bids for certain portions of the construction project, including the framing of the house. In late February or early March 1995, Niemeyer contacted Sorenson to do the framing work on the Dagers' house. The record shows that Sorenson orally provided Niemeyer with a figure of $72,840 for the fram-

ing and that Niemeyer used the $72,840 figure in a proposed contract submitted to the Dagers. At trial, Sorenson attempted to show that the $72,840 was merely a cost estimate, while the Dagers, through Niemeyer's testimony, attempted to show that the $72,840 was a firm "bid."

At trial, on direct examination, Niemeyer testified that he specifically asked Sorenson for a bid on the project, telling Sorenson, " 'We need to get a bid on this plan so we can get the house started.' " Although, on cross-examination, Niemeyer testified that the figure Sorenson provided might have been an estimate. Niemeyer testified that he had previously worked with Sorenson on a bid basis and that on each occasion, he received a written bid from Sorenson. Niemeyer testified that he did not receive a written bid from Sorenson at any time on the Dagers' house.

Sorenson testified that he told Niemeyer that he would not do the job on a bid basis, only on an estimate basis. Sorenson testified that Niemeyer agreed to pay him a monthly draw of $15,000 and that he and Niemeyer agreed that when Sorenson and his crew completed framing, Sorenson would submit a final bill to Niemeyer. Sorenson testified that this bill would show in detail the hours his crew worked and the cost of the materials used, and that he and Niemeyer would settle up at this point.

The record shows that Sorenson and his crew started framing the Dagers' house sometime in August 1995 and that by the time Sorenson and his crew arrived, Niemeyer and his crew had completed a majority of the basement framing.

At trial, Niemeyer testified that he told Sorenson that he would be billing Sorenson for the framing work Niemeyer and his crew had completed on the basement and that this figure would be deducted from the $72,840 figure Sorenson had provided Niemeyer. Sorenson testified that he thought that he was going to be paid on an hourly basis and that nothing Niemeyer and his crew did before he and his crew arrived would affect their pay. Sorenson testified that he assumed that the Dagers would pay Niemeyer and his crew for their framing.

The record shows that Niemeyer paid Sorenson $10,000 in August 1995 (because Sorenson and his crew worked a partial month), $15,000 in September, and $15,000 in October. The

record shows that a conflict arose in December when Sorenson requested that Niemeyer pay him $15,000 for the November work.

Niemeyer testified that he told Sorenson prior to December 1995 that they needed to sit down and figure out how many hours Niemeyer and his crew had spent framing. Niemeyer testified that he told Sorenson that this amount needed to be deducted from the $72,840 figure Sorenson gave him and that Sorenson told him that he would take care of it. Niemeyer testified that Sorenson never did so. Niemeyer testified that in addition to the framing he and his crew completed on the basement before Sorenson's arrival, he and his crew framed for approximately 2 weeks in September.

Niemeyer testified that by his calculations, he and his crew had done approximately $15,338 worth of framing and that after deducting this amount and the payments made to Sorenson in August, September, and October 1995, he owed Sorenson a balance of approximately $17,000. The record shows that Niemeyer did not pay Sorenson $15,000 in December because of Dager's concern that Sorenson's draws were starting to exceed the bid price and because there was still a lot of framing to do. Niemeyer testified that instead, he did as Dager instructed and paid Sorenson $5,000.

Similarly, Sorenson testified that after he requested payment from Niemeyer for November 1995, Niemeyer gave him a check for $5,000 and a bill for $15,338. Sorenson testified that he attempted to cash the $5,000 check and that payment on the check had been stopped. Sorenson testified that at that point, he pulled his crew from the job and that Niemeyer failed to pay him any additional amounts. In contrast, Niemeyer testified that Sorenson walked off the job before attempting to cash the check and that at this time, Niemeyer called the bank and requested that it stop payment on the check. At trial, the parties agreed that when Sorenson and his crew walked off the job, 85 to 90 percent of the framing on the Dagers' house was completed.

Sorenson testified that subsequently, he filed a lien in the amount of $22,668.25 after calculating the total cost of labor and materials used to frame the Dagers' house and deducting the $40,000 that Niemeyer had paid him. At trial, the parties stipu-

lated that Sorenson filed his lien in a timely manner and that Sorenson mailed the Dagers a copy of the notice of lien liability, which the Dagers received on April 16, 1996.

In an order filed January 28, 1998, the district court found that although Sorenson and Niemeyer had entered into an oral contract, Sorenson was not entitled to foreclose his lien because Sorenson had failed to substantially perform under his contract with Niemeyer. The court also found that Sorenson could not recover under the theory of quantum meruit against the Dagers because Niemeyer and not the Dagers failed to pay Sorenson. The court found that there was no evidence that the Dagers had been unjustly enriched.

Regarding the Dagers' counterclaim against Sorenson for damages due to work delays and unworkmanlike performance, the district court held that the Dagers failed to present sufficient evidence of unworkmanlike performance, or that the work delays or deviations from the building specifications caused the Dagers any measurable damages. Sorenson appeals.

## STANDARD OF REVIEW

An action to foreclose a construction lien is one grounded in equity. *Tilt-Up Concrete v. Star City/Federal*, 255 Neb. 138, 582 N.W.2d 604 (1998). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ASSIGNMENTS OF ERROR

On appeal, Sorenson contends that the district court erred in (1) entering judgment against Sorenson after it found for Sorenson on every issue of fact necessary for recovery; (2) holding that Sorenson was required to prove substantial performance in order to recover; (3) finding that Sorenson had not substantially performed under the contract at issue; (4) holding that Sorenson could not foreclose a construction lien in an amount

equal to the reasonable value of goods and services he provided; (5) determining that Sorenson's remedy should be against Niemeyer, the general contractor, rather than the improved property; and (6) denying Sorenson's motion for a new trial.

## ANALYSIS

"A person who furnishes services or materials pursuant to a real estate improvement contract has a construction lien[.]" § 52-131(1). A "real estate improvement contract" is defined as "an agreement to perform services, including labor, or to furnish materials for the purpose of producing a change in the physical condition of land or of a structure." § 52-130. A construction lien is not valid absent a contract between the parties. § 52-131; *Tilt-Up Concrete, supra.* A contract may be written or oral and can be shown by circumstantial evidence. *Tilt-Up Concrete, supra.* To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Id.* Mutual assent to a contract is determined by the objective manifestations of intent by the parties, not by their subjective statements of intent. *Id.*

In the district court's order, it stated that clearly, Sorenson and Niemeyer were operating under an oral contract, otherwise Sorenson would not have worked for several months, nor would Niemeyer have paid Sorenson. Pointing to the testimony at trial, the court held that the evidence shows that the oral contract entered into by Sorenson and Niemeyer was a cost estimate for materials and services and not a bid. The court noted that Niemeyer manifested his acceptance to the contract by using the cost estimate in his contract with the Dagers and that the contract continued until Niemeyer refused to pay Sorenson in December 1995. The court noted that Sorenson stopped working on the Dagers' house because of Niemeyer's nonpayment. Therefore, although the court did not specifically state that Sorenson did not default on his contract with Niemeyer, such a finding is implicit in the court's order.

On appeal, neither the Dagers nor Sorenson argue that Sorenson and Niemeyer failed to enter into a contract. Rather, Sorenson and the Dagers disagree as to whether Sorenson is

entitled to foreclose on his lien pursuant to Sorenson's contract with Niemeyer. The Dagers argue that Sorenson cannot foreclose his lien because Sorenson defaulted on his contract with Niemeyer. As did the district court, we find Sorenson did not default on his contract with Niemeyer. Therefore, we focus on the court's holding that although Sorenson and Niemeyer entered into an oral contract, Sorenson could not recover on his lien because he did not substantially perform under his contract with Niemeyer.

On appeal, Sorenson argues that the district court erred in finding that he failed to substantially perform under his contract with Niemeyer and that regardless of whether he substantially performed, he is entitled to foreclose his construction lien on the Dagers' house.

*Substantial Performance.*

In a building contract, substantial performance is shown when all the essential elements necessary for the full accomplishment of the purposes of the contract have been performed with such an approximation to complete performance that the owner obtains substantially what is called for by the contract. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). To establish substantial performance under a contract, any deviations from the contract must be relatively minor and unimportant. *VRT, Inc. v. Dutton-Lainson Co.*, 247 Neb. 845, 530 N.W.2d 619 (1995). Substantial performance is a relative term, and whether it exists is a question to be determined in each case with reference to the existing facts and circumstances. *Id.*

In the district court's order, it noted that when Sorenson stopped work, the framing on the Dagers' house was between 80 to 90 percent complete, with the basement and first floor finished, and the second floor almost complete.

The district court found that both Sorenson and Niemeyer agreed that their contract called for Sorenson to do all of the framing for the basement, the first floor, and the second floor. The court noted that Sorenson admitted at trial that at least 10 percent of the framing was not completed when Sorenson stopped working. The court noted:

[T]he uncompleted work was not something peripheral to the main purpose of the contract, or a missing item that could be dispensed with as unnecessary. . . . The plaintiff did not frame all of the second floor, and thus did not fully perform its part of the contract. While the plaintiff's reason for stopping work is understandable, this does not make the plaintiff's performance substantial. The defendants could not have just overlooked the missing framing work as minor or unimportant; it was an essential part of the construction of the house.

After reviewing the record de novo, we conclude that the district court's determination in this regard was correct.

In the district court's order, it noted that Sorenson is not entitled to foreclose on his mechanic's lien "because he did not substantially perform under the contract between the plaintiff [Sorenson] and Niemeyer."

Relying on *Tilt-Up Concrete v. Star City/Federal*, 255 Neb. 138, 582 N.W.2d 604 (1998), Sorenson contends that his lack of substantial performance does not bar him from foreclosing his lien in an amount equal to the reasonable value of his services and materials.

*Foreclosure of Lien Absent Substantial Performance.*

In *Tilt-Up Concrete*, Tilt-Up contracted with Star City/Federal, Inc. (Star City), to construct improvements on real estate owned by Star City. Upon Star City's failure to make payments for the improvements, Tilt-Up filed a construction lien on the real estate and, subsequently, filed a petition for foreclosure in the district court. The court found that Tilt-Up had a valid construction lien in the amount of $852,243.70 and entered judgment against Star City in that amount, plus prejudgment interest and costs.

On appeal, the Nebraska Supreme Court held that the district court erred in calculating the value of Tilt-Up's construction lien at full-contract damages, rather than at the reasonable value of services performed and materials furnished.

In *Tilt-Up Concrete*, the Nebraska Supreme Court held that Tilt-Up was a prime contractor, since Tilt-Up had contracted directly with Star City. Section 52-127(8) provides that a "prime

contractor" is "any person who makes a real estate improvement contract with a contracting owner." A "contracting owner" is "a person who owns real estate and who, personally or through an agent, enters into a contract, express or implied, for the improvement of the real estate." § 52-127(3).

Section 52-136(1)(a) provides that "[t]he lien of a prime contractor is for the unpaid part of his or her contract price." "Contract price" means "the amount agreed upon by the contracting parties for performing services and furnishing materials covered by the contract, increased or diminished by the price of change orders or extras, amounts attributable to altered specifications, or breach of contract." § 52-127(2).

■ In *Tilt-Up Concrete*, the Nebraska Supreme Court held that a prime contractor is entitled to the unpaid part of his or her contract price under § 52-136(1)(a) when the prime contractor has substantially performed the contract; however, when the prime contractor has not substantially performed the contract or has been prevented from completing his or her work, the contractor is entitled to a lien for the reasonable value of the labor he or she has performed and the material he or she has furnished. In *Tilt-Up Concrete*, the Nebraska Supreme Court held that Tilt-Up failed to substantially perform under its contract with Star City and, therefore, concluded that Tilt-Up was entitled only to the reasonable value of the labor performed and the materials furnished.

The Dagers contend that Sorenson cannot recover under the provisions of § 52-136, which apply to the lien of a claimant other than a prime contractor, because Sorenson did not substantially perform his contract with Niemeyer. Sorenson acknowledges that his lack of substantial performance may bar his recovery under § 52-136, but states that regardless of whether he substantially performed, he can recover the reasonable value of the services and materials he provided to frame the Dagers' house under quantum meruit. In addition to *Tilt-Up Concrete v. Star City/Federal*, 255 Neb. 138, 582 N.W.2d 604 (1998), Sorenson cites *Peters v. Halligan*, 182 Neb. 51, 152 N.W.2d 103 (1967).

In *Peters*, 182 Neb. at 59-60, 152 N.W.2d at 109, the Nebraska Supreme Court stated:

> A party who has entered upon a contract, even though he has not substantially performed it, may have rendered a substantial benefit to the other party, and yet be subjected to a loss of all which he has performed in the nature of damages for the nonfulfillment of the remainder of the contract, upon the technical rule that the contract must be substantially performed in order to warrant a recovery of any part of the compensation. The rule denying recovery, therefore, puts the party who partially performs his contract in a much worse position than one who wholly disregards his contract, and the other party may receive much more . . . than he could be entitled to if he were seeking to recover damages by an action. We believe the better rule to be that a party may recover on a quantum meruit basis for partial performance for the value of benefits conferred even though he abandons the contract or refuses to perform it, subject to any counterclaim for damages that the other party has sustained by reason of the breach of the agreement.

Generally, the principle of quantum meruit is a contract implied in law theory of recovery based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another. *Tracy v. Tracy*, 7 Neb. App. 143, 581 N.W.2d 96 (1998). The issue of unjust enrichment is a question of fact. *Id.* Where benefits have been received and retained under circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the recipient to pay the reasonable value of the services. *Id.*

In the instant case, Sorenson, a subcontractor, seeks to recover the reasonable value of the labor his crew performed and the materials he furnished while framing the Dagers' house. We recognize that the instant case is distinguishable from *Tilt-Up Concrete, supra*, in that Sorenson is a subcontractor, not a prime contractor, and that Sorenson is seeking to establish and foreclose a lien against property owned by the Dagers not Niemeyer with whom he contracted. While this is a noticeable distinction,

we do not believe that the distinction is crucial ·to Sorenson's lien.

## CONCLUSION

We conclude that regardless of whether Sorenson substantially performed his contract with Niemeyer, Sorenson is entitled to a lien for the reasonable value of the labor he performed and the materials he furnished, subject to the Dagers' counterclaim for damages. Because the Dagers have not appealed the district court's determination that they failed to prove their counterclaim, we conclude that Sorenson is entitled to an order establishing a lien against the Dagers' property in the amount of $22,688.25, and for a foreclosure of the same as provided by law. Said sum is for the reasonable value of the services Sorenson performed and materials he furnished on the Dagers' house for which Sorenson was not paid. We reverse, and remand to the district court to enter judgment in favor of Sorenson in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.