277 Neb. 617 (2009)
ROBERT E. TAYLOR, APPELLEE,
v.
LEATHA L. TAYLOR, APPELLEE, AND SHIRLEY J. LITTLE, APPELLANT.
No. S-08-303.
Supreme Court of Nebraska.
Filed April 17, 2009.
Galen E. Stehlik, of Lauritsen, Brownell, Brostrom, Stehlik, Myers & Daugherty, P.C., L.L.O., for appellant.
Forrest F. Peetz, of Peetz Law P.C., L.L.O., for appellee Robert E. Taylor.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
CONNOLLY, J.
In this partition action, appellee Robert E. Taylor, contests the validity of a construction lien. Anticipating a partition sale, the appellant, Shirley J. Little (Shirley), cleaned up the property by removing junk and tree limbs from the premises. Later, she filed a construction lien against the property.
The district court found that lien was invalid under the Nebraska Construction Lien Act (Act).[1] We affirm, because under the Act, Shirley's cleanup activities did not produce a sufficient change in the property's physical condition of the land to support a valid real estate improvement contract.
Robert and Shirley are brother and sister, and they owned undivided one-half interests in property subject to a life estate owned by their mother, appellee Leatha L. Taylor. Leatha became ill and moved out of her home, and all three agreed that they should sell the property. After disagreements arose while attempting to sell the house, Robert brought a partition action. Leatha did not object to the partition. Shirley crossclaimed, alleging that she had, at Leatha's request, cleaned up the property to prepare it for sale. Shirley filed a purported construction lien for $3,692.46. The referee sold the property, and the court confirmed the sale.
The court determined each party's share: 16.691 percent to Leatha, 41.6545 percent to Shirley, and 41.6545 percent to Robert. The court also awarded Robert $1,636.19 in attorney fees for bringing the partition action.[2] Finding that Shirley's lien was invalid under the Act, the court refused to order payment out of the sale proceeds for Shirley's purported lien.
[1,2] Shirley argues that the trial court erred in (1) finding that her lien was invalid and (2) awarding Robert the entire amount of his attorney fees. Interpreting the Act presents a question of law, and when reviewing questions of law, we resolve the questions independently of the lower court's conclusions.[3] Under the Act, "[a] person who furnishes services or materials pursuant to a real estate improvement contract has a construction lien . . . to secure the payment of his or her contract price."[4] A construction lien is not valid absent a contract between the parties.[5] A real estate improvement contract is
an agreement to perform services, including labor, or to furnish materials for the purpose of producing a change in the physical condition of land or of a structure including:
(a) Alteration of the surface by excavation, fill, change in grade, or change in a shore, bank, or flood plain of a stream, swamp, or body of water;
(b) Construction or installation on, above, or below the surface of land;
(c) Demolition, repair, remodeling, or removal of a structure previously constructed or installed;
(d) Seeding, sodding, or other landscaping operation;
(e) Surface or subsurface testing, boring, or analyzing; and
(f) Preparation of plans, surveys, or architectural or engineering plans or drawings for any change in the physical condition of land or structures whether or not used incident to producing a change in physical condition of the real estate.[6]
Under § 52-131, to have a construction lien, Shirley must have had a real estate improvement contract with Leatha. And under § 52-130, to have a valid real estate improvement contract, Shirley's efforts must have produced a change in the physical condition of the land. Shirley claims her lien is for "expenses and time incurred in cleaning up and preparing the house and property to a level of sal[e]ability." According to Shirley, she and her husband spent about 19 days from July to October 2006 cleaning up the property. They cleaned inside the house; they removed items from the yard and other buildings on the property, such as old washers, cars, pieces of iron, tires, lumber, and other garbage; and they removed dead tree branches and other landscaping debris. Shirley claims that these efforts produced a sufficient change in the property's physical condition to qualify as an improvement contract.
Of course, Robert argues that Shirley's cleanup did not result in a physical change in the condition of the land. The district court agreed, holding that the "labor provided by [Shirley] did not produce a change in the physical condition of the land or structure." The court determined that the lien was unenforceable.
We have never determined what activities produce a "change in the physical condition of the land" sufficient to support imposing a construction lien. The Nebraska Court of Appeals has held that a contractor that made repairs to a sewerline could recover on a construction lien.[7] It also has held that a subcontractor could obtain a construction lien for his labor and materials used in framing a house.[8] But here, Shirley made no improvements or alterations to the house.
[3] We believe Shirley's activities are inconsistent with the property changes contemplated by § 52-130. Section 52-130 does not define improvements, but does list examples. It speaks to alteration of the surface; demolition, repair, remodeling, or removal of a structure; and seeding, sodding, or other landscaping operations. These changes produce permanent improvements to the real property. Moreover, § 52-130(2) excludes from the definition of real estate improvement contracts activities primarily for the disposal or removal of objects. While cleaning up the yard and removing personal property from buildings may have made the property more appealing to future buyers, it did not produce a permanent improvement in the physical condition of the land sufficient to qualify under the Act. Shirley's purported lien is unenforceable.
[4] Next, we address Robert's attorney fees. A party may recover attorney fees and expenses in a civil action only when provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[9] Section 25-21,108 provides for attorney fees in partition actions as follows:
[T]he court shall, after partition or after the confirmation of the sale and the conveyance by the referee, determine a reasonable amount of attorney's fees to be awarded, which amount shall be taxed as costs in the proceedings. If the shares confirmed by such judgment and the existence of all encumbrances of which the plaintiff had actual or constructive notice were accurately pleaded in the original complaint of the plaintiff, such attorney's fees shall be awarded entirely to the attorney for the plaintiff; otherwise, the court shall order such fees for the attorneys to be divided among such of the attorneys of record in the proceedings as have filed pleadings upon which any of the findings in the judgment of partition are based.
Shirley contends that the district court should not have awarded Robert the entire amount of his attorney fees. She argues that most of the legal work did not involve the partition action, but involved Robert's attempts to nullify the claimed encumbrances. Alternatively, she argues that Robert's pleadings do not reflect the existence of any encumbrances, because it was Shirley who cross-complained for the encumbrance and Robert who denied the existence of the encumbrances in his answer.
Robert claims that he correctly pleaded the shares that the court ultimately confirmed and that the court was correct in awarding his entire attorney fees. He argues that before the court could confirm the sale, it had to address Shirley's construction lien. We agree.
[5] When an attorney fee is authorized, the fee is left to the trial court's discretion, and we will not disturb its ruling on appeal absent an abuse of discretion.[10] For steering the partition action to a confirmed sale, the district court awarded Robert the entire amount of his attorney fees, $1,636.19. We do not find this to be an abuse of discretion.
Affirmed.
MILLER-LERMAN, J., participating on briefs.
NOTES
[1] Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 2004).
[2] See Neb. Rev. Stat. § 25-21, 108 (Reissue 2008).
[3] See State v. Moore, 277 Neb. 111, 759 N.W.2d 698 (2009).
[4] § 52-131.
[5] Tilt-Up Concrete v. Star City/Federal, 255 Neb. 138, 582 N.W.2d 604 (1998).
[6] § 52-130(1).
[7] Baumgartner v. Berry, No. A-03-1208, 2005 WL 1021861 (Neb. App. May 3, 2005) (not designated for permanent publication).
[8] Sorenson v. Dager, 8 Neb. App. 729, 601 N.W.2d 564 (1999).
[9] See In re Estate of Chrisp, 276 Neb. 966, 759 N.W.2d 87 (2009).
[10] See id.