Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/15/2024 10:20 AM CDT

Nore Electric Inc., appellee and cross-appellant, v.
S & H Holdings, L.L.C., a Nebraska limited liability
company, and Realty Income Properties 19, LLC,
a Delaware limited liability company, appellants
and cross-appellees, Rose Plumbing, LLC, et al.,
appellees and cross-appellants, and Energy
Roofing Technology, Inc., a Nebraska
corporation, appellee and
cross-appellant.

___ N.W.3d ___

Filed March 15, 2024.    No. S-23-282.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.
2. **Statutes: Liens.** The construction lien statutes are cumulative and remedial in nature and require a liberal construction so as to effectuate their objects and purposes and protect all claimants within their scope, as well as to promote substantial justice.
3. **Statutes: Legislature: Intent.** When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.
4. **Statutes: Intent.** In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served and then place on the statute a reasonable construction that best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.
5. **Statutes: Legislature: Intent.** In determining the meaning of a statute, a court may conjunctively consider and construe a collection of statutes that pertain to a certain subject matter to determine the intent of the

Legislature so that different provisions of the act are consistent, harmonious, and sensible.

6. **Contracts: Real Estate: Liens.** Under the Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 2021), the real estate subject to construction liens is ultimately determined by the contracting owner's contract for the improvement of the real estate.

7. **Contracts: Contractors and Subcontractors: Real Estate: Liens.** By operation of the Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 2021), a construction lien is automatically created whenever a contractor furnishes services or materials and originates from the contracting owner's entering into the improvement contract, even though it has not yet attached to the real estate and is not yet enforceable.

Appeal from the District Court for Dawson County: James E. Doyle IV, Judge. Affirmed.

Richard P. Garden, Jr., and Nathan D. Clark, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellee Energy Roofing Technology, Inc.

Elizabeth J. Klingelhoefer, of Jacobsen Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellees Nore Electric Inc., and Rose Plumbing, LLC, et al.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Freudenberg, JJ., and Keane, District Judge.

Heavican, C.J.
## INTRODUCTION
This action arises under the Nebraska Construction Lien Act (NCLA), Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 2021).

Nore Electric Inc. instituted judicial proceedings against S & H Holdings, L.L.C. (S&H), and Realty Income Properties 19, LLC (RIP), to enforce its construction lien. Nore Electric joined all other construction lienholders as defendants. We refer to all of the construction lienholders, including Nore Electric, collectively as the "contractors."

Relevant to this appeal, the district court concluded that under the NCLA, S&H was the "contracting owner" and effectively terminated its "notice of commencement," causing the notice of commencement to "lapse." It further concluded that the contractors' liens attached to the subject property after the notice lapsed and that the contractors' liens had priority over RIP's interest.

S&H and RIP appeal the district court's conclusion that the construction liens attached with priority over RIP's fee interest. Energy Roofing Technology, Inc., and Nore Electric, with the other contractors, cross-appeal the court's conclusion that the notice of commencement was effectively terminated. We affirm the district court's decision without reaching the merits of the contractors' cross-appeal.

BACKGROUND

S&H owned the subject property from February 11, 2014, to February 1, 2019. On June 11, 2018, S&H entered into a project management agreement with Integrated Construction Management Services, Inc. (ICMS), to construct a "new Burger King" on the subject property. On July 18, S&H recorded a notice of commencement[1] with the Dawson County register of deeds. The notice of commencement provided that S&H was the contracting owner and the fee simple holder of the subject property and that the notice would expire on June 11, 2019.

The contractors entered into contracts with ICMS to provide materials and services in the construction of the Burger King. Ultimately, ICMS did not fully pay the contractors for their materials and services.

On January 18, 2019, S&H executed a warranty deed conveying the subject property with the Burger King improvement to RIP. The warranty deed was recorded in the Dawson County register of deeds office on February 1.

---

[1] See §§ 52-127(5) and 52-145.

On February 11, 2019, S&H recorded a notice of termination of the notice of commencement.[2] The notice of termination named S&H as the contracting owner and the fee simple holder of the subject property and provided that the notice of commencement would be terminated as of March 15.

On March 15, 2019, S&H recorded an affidavit that stated the notice of termination was published as statutorily required.[3] The publications stated that S&H was the contracting owner and fee simple holder of the subject property.[4]

From March 22 through April 18, 2019, the contractors recorded construction liens against the subject property.[5] S&H and RIP refused to satisfy the liens and pay the contractors. Nore Electric brought this suit to enforce the liens and joined the other lienholders as defendants.[6]

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

The parties brought cross-motions for summary judgment. S&H and RIP argued that they were entitled to summary judgment because the contractors' liens did not attach to the subject property, since S&H was no longer the property's owner when the liens were recorded. For their part, the contractors argued that their liens attached because (1) the transfer in ownership had no effect on the liens' attachment and (2) S&H's notice of termination was not effective.

In its order on the summary judgment motions, the district court found that "[S&H] complied with all the recording requirements imposed to terminate its notice of commencement"; thus, the notice lapsed on March 15, 2019, but the liens still attached to the subject property.

---

[2] See §§ 52-127(6) and 52-146.

[3] See § 52-146(1)(c) and (d).

[4] See § 52-146(2).

[5] See § 52-147.

[6] See § 52-155.

The court reasoned that the argument advanced by S&H and RIP "inappropriately conjoin[ed] the specification in the statute of *who* can become a 'contracting owner,' . . . with the definition of the *real property subject to a construction lien* . . . ."[7] In the court's view, "[t]he descriptor 'contracting owner's' in §52-133(2) is used as a modifier of the term 'real estate being improved or directly benefited' [and] identifies the real estate . . . to which a lien may attach." It concluded that the transfer of the subject property "did not extinguish the character of the real estate, i.e., under the [NCLA,] the real estate retained its character as the 'contracting owner's real estate being improved or directly benefited' by the work and materials of the [contractors]."

Because the notice of commencement had lapsed before any of the liens were recorded, the court found that pursuant to § 52-137(3), the contractors' construction liens attached to the subject property at the time each lien was recorded or on the 31st day after the notice of commencement lapsed. However, due to disputes of material fact, further proceedings were required to determine the liens' priority and amounts.

### DECREE OF FORECLOSURE

Thereafter, the parties submitted the matter on stipulated facts, and the court issued a decree of foreclosure. In its decree, the court again found that S&H completed all the actions specified under § 52-146(1) and that the notice of commencement lapsed on March 15, 2019.

The court also again rejected the argument advanced by S&H and RIP that the liens did not attach to the subject property because the liens were filed when RIP had title to the property, not S&H—the contracting owner. The relevant portion of the court's decree is as follows:

---

[7] Compare § 52-127(3), with § 52-133(2).

This claim, if honored, would completely nullify the statutory provisions pertaining to the notice of commencement and how it is terminated, and the protection the notice of commencement and the process for its termination provide to lien claimants. The claim by [S&H and RIP] also negates the underlying principles behind the process for the filing of the notice of commencement and its termination as they relate to the protection of contractors who rely upon the termination date originally stated in the notice of commencement.

The effort by [S&H and RIP] to avoid the clear application of the law is rejected. To allow [S&H] to transfer the property [free of all construction liens] while its notice of commencement was effective would be contrary to the express language of the NCLA and to the intended purposes behind the notice of commencement, including the purpose of stating a termination date in the notice of commencement. [S&H and RIP's] claims would completely remove the protection in §52-137 given contractors and would negate the rationale behind such statute[,] which authorizes a lien claimant who had not filed prior to the originally stated termination date, to record its lien during the periods specified in §52-137.

The court found that under §§ 52-137 and 52-138, the contractors' liens had priority based on the dates that the liens were recorded and that "[RIP's] fee interest in the subject real estate is subject to the liens of the contractors."

S&H and RIP appeal and challenge the court's conclusion that the contractors' liens could have attached when S&H, as the contracting owner, was no longer the owner of the subject property when the liens otherwise would have attached under § 52-137(3)(b). S&H and RIP rely primarily on the language of § 52-133(2) that provides contractors' liens are on "the contracting owner's real estate being improved or directly benefited." The contractors cross-appeal and challenge the

court's conclusion that the notice of termination was effective when S&H failed to strictly comply with the requirements of § 52-146. The court's determinations regarding the lien amounts and awards of prejudgment interest are not at issue in this appeal.

## ASSIGNMENTS OF ERROR

S&H and RIP assign, summarized, that the district court erred in finding that the contractors' liens attached to the subject property and had priority over RIP's fee interest. The contractors assign that the district court erred in finding that S&H effectively terminated its notice of commencement.

## STANDARD OF REVIEW

[1,2] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.[8] The construction lien statutes are cumulative and remedial in nature and require a liberal construction so as to effectuate their objects and purposes and protect all claimants within their scope, as well as to promote substantial justice.[9]

## ANALYSIS

In substance, the parties' assignments of error concern only the issues of the contractors' liens attachment and priority based on the district court's conclusions of law under the NCLA. But before turning to those issues, a review of our principles of law concerning liens generally, and construction liens specifically, is in order.

### Liens and Construction Liens

The term "lien" is applied in various modes, but in all cases, it signifies an obligation, tie, duty, or claim annexed to

---

[8] *Echo Group v. Tradesmen Internat.*, 312 Neb. 729, 980 N.W.2d 869 (2022).

[9] *Senften v. Church of the Nazarene*, 214 Neb. 708, 335 N.W.2d 753 (1983); *Chicago Lumber Co. v. Horner*, 210 Neb. 833, 317 N.W.2d 87 (1982). See, also, *McCormick v. Lawton*, 3 Neb. 449 (1872).

or attaching upon property by the common law, equity, contract, or statute.[10] A lien affords a supplemental and additional remedy for collection that is given the force of law.[11] A statute giving a lien is regarded as remedial and must be so construed as to give full force and effect to the remedy in view of the beneficial purpose contemplated.[12]

Under Nebraska's prior existing acts pertaining to construction liens,[13] the liens related back to the time work began on the improvement.[14] To that end, we referred to such liens as "inchoate"[15] or "'hidden'"[16] liens. Any party purchasing the property within the time a contractor was allowed to perfect the lien under the acts took title subject to any future construction lien.[17] The law served as notice that such a lien may be filed.[18] Accordingly, even though the liens were not recorded prior to the purchase, no party could be a bona fide purchaser.[19] In that way, Nebraska's construction lien acts

---

[10] See *Landis Machine Co. v. Omaha Merchants Transfer Co.*, 142 Neb. 389, 6 N.W.2d 380 (1942). See, also, *Dupuy v. Western State Bank*, 221 Neb. 230, 375 N.W.2d 909 (1985).

[11] *Id*.

[12] *Id*.

[13] See, Neb. Rev. Stat. ch. 52 (1943); Gen. Stat. ch. 42 (1873); Rev. Stat. ch. 35 (1866); 1855 Neb. Laws, part II, Liens to Mechanics (1st Sess.).

[14] See, e.g., *Goodwin v. Cunningham*, 54 Neb. 11, 74 N.W. 315 (1898); *Bohn Sash & Door Co. v. Case*, 42 Neb. 281, 60 N.W. 576 (1894); *Doolittle & Gordon v. Plenz*, 16 Neb. 153, 20 N.W. 116 (1884).

[15] See, e.g, *Goodwin v. Cunningham, supra* note 14, 54 Neb. at 13, 74 N.W. at 315.

[16] See *Borrenpohl v. DaBeers Properties*, 276 Neb. 426, 432, 755 N.W.2d 39, 44 (2008). See, also, *Smith v. Potter*, 92 Neb. 39, 137 N.W. 854 (1912), *modified on denial of rehearing* 92 Neb. 39, 138 N.W. 1135.

[17] See, *Goodwin v. Cunningham, supra* note 14; *Bohn Sash & Door Co. v. Case, supra* note 14; *Doolittle & Gordon v. Plenz, supra* note 14.

[18] See, *Doolittle & Gordon v. Plenz, supra* note 14; *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207, 55 N.W. 643 (1893).

[19] See *id.*

derogated the common law, which held that under other circumstances, subsequent bona fide purchasers, whose deeds were recorded first, would be able to void any prior existing, but unrecorded, encumbrance.[20]

The NCLA was enacted in 1981[21] and amended our prior statutes concerning construction liens. This court has recognized that "[a]n examination of these statutes, together with prior acts in sequence, discloses some changes and extensions in some respects, but there has been no change in the designation of persons entitled to a lien under the act, or the priorities created by the act."[22] Additionally, this court has recognized that the NCLA is an almost verbatim version of article 5 of the Uniform Simplification of Land Transfers Act (USLTA),[23] and although the Nebraska Legislature did not adopt the comments or other articles of the USLTA, this court nonetheless looks to them in order to understand the NCLA.[24]

Under the NCLA, "[a] person who furnishes services or materials pursuant to a real estate improvement contract has a construction lien . . . to secure the payment of his or her contract price."[25] A "real estate improvement contract" is defined as "an agreement to perform services, including labor, or to furnish materials for the purpose of producing a change in the

---

[20] See, e.g., *Carpenter Paper Co. v. Wilcox*, 50 Neb. 659, 70 N.W. 228 (1897); *Weaver v. Coumbe*, 15 Neb. 167, 17 N.W. 357 (1883); *Kittle v. St. John*, 10 Neb. 605, 7 N.W. 271 (1880).

[21] See 1981 Neb. Laws, L.B. 512.

[22] *Hulinsky v. Parriott*, 232 Neb. 670, 673-74, 441 N.W.2d 883, 886 (1989).

[23] Unif. Simplification of Land Transfers Act art. 5, 14 U.L.A. 312 (1990).

[24] *Tilt-Up Concrete v. Star City/Federal*, 261 Neb. 64, 621 N.W.2d 502 (2001). See *Action Heating & Air Cond. v. Petersen*, 229 Neb. 796, 429 N.W.2d 1 (1988). See, also, *Omaha Constr. Indus. Pension Plan v. Children's Hosp.*, 11 Neb. App. 35, 642 N.W.2d 849 (2002).

[25] § 52-131(1).

physical condition of land or of a structure."[26] A construction lien is not valid absent a contract between the parties.[27]

A "[c]laimant" is a person having a right to a lien upon real estate and includes his or her successor in interest,[28] in this case, the contractors. A "[c]ontracting owner" is a person who owns real estate and who, personally or through an agent, enters into a contract, express or implied, for the improvement of the real estate,[29] undisputedly S&H herein. The word "owner" is not limited in its meaning to an owner of the fee but means the owner of any interest in the lands and includes every character of title, whether legal or equitable, fee simple, or leasehold.[30] Both S&H and RIP qualify as owners.

With these principles in mind, we turn to the issues raised by the parties.

### Attachment and Priority

S&H and RIP's primary argument is that construction liens can only attach to the contracting owner's real estate. They contend that the contractors' liens did not attach to the subject property because S&H was undisputedly the contracting owner and, at the time the liens were recorded, RIP was undisputedly the owner of the real estate. Like the district court, we reject this argument.

In support, S&H and RIP rely upon the statutory language of § 52-133 governing the real estate subject to a construction lien. They point to the language provided in multiple

---

[26] § 52-130(1). See, also, *Taylor v. Taylor*, 277 Neb. 617, 764 N.W.2d 101 (2009).

[27] See, *Tilt-Up Concrete v. Star City/Federal, supra* note 24; *Mid-America Maintenance v. Bill Morris Ford*, 232 Neb. 920, 442 N.W.2d 869 (1989). See, also, *Sorenson v. Dager*, 8 Neb. App. 729, 601 N.W.2d 564 (1999).

[28] § 52-127(1).

[29] § 52-127(3).

[30] See *Midlands Rental & Mach. v. Christensen Ltd.*, 252 Neb. 806, 566 N.W.2d 115 (1997).

subsections that a construction lien is on the *contracting owner's* real estate. Section 52-133 provides in full:

(1) If at the time a construction lien is recorded there is a recorded notice of commencement covering the improvement pursuant to which the lien arises, the lien is on the contracting owner's real estate described in the notice of commencement.

(2) Except as provided in subsection (3) of this section, if at the time a construction lien is recorded there is no recorded notice of commencement covering the improvement pursuant to which the lien arises, the lien is on the contracting owner's real estate being improved or directly benefited.

(3) If a claimant who recorded a lien while there was no recorded notice of commencement covering the real estate later records a notice of commencement, his or her lien is on the contracting owner's real estate described in the notice of commencement.

(4) If as a part of an improvement on his or her real estate or for the purpose of directly benefiting his or her real estate an owner contracts for improvements on real estate not owned by him or her, persons who furnish services or materials in connection with that improvement have a lien against the contracting owner's real estate being improved or directly benefited to the same extent as if the improvement had been on the contracting owner's real estate.

(5) If a recorded notice of commencement covers more than one lot in a platted subdivision of record, a claimant may apportion his or her lien to the various lots covered by the notice of commencement in any proportion he or she chooses and states in his or her recorded lien, including assigning all his or her lien to a particular lot.

(6) If a recorded lien does not contain an apportionment as provided in subsection (5) of this section, the owner may make demand on the claimant to make

an apportionment and, if the claimant does not, within thirty days after the demand, make an apportionment by recording an amendment of the recorded lien, the owner may make a good faith apportionment by recording an owner's statement of apportionment. Notwithstanding the fact that the owner did not in fact give the notice to apportion referred to in this subsection or for any other reason was not entitled to record a statement of apportionment, or did not make a good faith apportionment, the apportionment is conclusive in favor of persons acquiring interests in the real estate after the statement of apportionment is recorded.

For their part, the contractors point to the first comment within the corresponding USLTA section. They contend that § 52-133 is limited in application to the geographic or spatial scope of the lien and does not apply in the temporal context of who owned the property when. The comment states:

1. This section deals with the *geographic or spatial extent* of a construction lien. If a notice of commencement is effective as to the improvement when the lien is recorded, the lien is on the real estate described in the notice of commencement. Therefore, an owner making improvements on a tract which he owns may, in his notice of commencement, *limit the real estate* against which a lien will arise *to that particular real estate* on which the improvement is being made. If, for example, a 100,000 square feet building is being built on a portion of a 40-acre tract, the notice of commencement could *limit the lienable real estate* to the 100,000 square feet on which the building sets and the surrounding land on which related work will be done. If, however, in a case in which there is a recorded notice of commencement describing *a limited part of a single tract* and improvement work outside the described part takes place, the work is not covered by the notice of commencement since the notice of commencement can apply only *to*

*the real estate described therein*. If, in the case of the 100,000 square feet building, the notice of commencement described 200,000 square feet with the building in the center and, as a part of the construction, an access road and sidewalks were built on owner's real estate *outside the described* 200,000 square feet, the lien arising for the road and sidewalks would not be *limited to the real estate* described in the notice of commencement. In that case, under subsection (b), the lien would be "on the contracting owner's real estate *being improved or directly benefited*." Under that language, a court might decide that *all the owner's 40-acre tract* was being "directly benefited" and allow a lien for the sidewalk and road improvements to be claimed against *the entire tract*.[31]

The district court concluded that in § 52-133, "'contracting owner's'" is a descriptor used as a modifying term that identifies the real estate being "'improved or directly benefited.'" We agree.

[3-5] When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[32] In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served and then place on the statute a reasonable construction that best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[33] In determining the meaning of a statute, a court may conjunctively consider and construe a collection of statutes that pertain to a certain subject matter (i.e., the NCLA) to determine the intent of the

---

[31] Unif. Simplification of Land Transfers Act, *supra* note 23, § 5-203, comment 1, 14 U.L.A. at 320 (emphasis supplied).

[32] *Echo Group v. Tradesmen Internat., supra* note 8.

[33] See *id*.

Legislature so that different provisions of the act are consistent, harmonious, and sensible.[34]

Within § 52-133(4), it is contemplated that a contracting owner may sometimes improve related real estate that the contracting owner does not own. In that event, the construction lien would not attach to the unowned real estate but only to the contracting owner's real estate. Without limiting the real estate being improved or directly benefited to the "contracting owner's real estate," § 52-133(4) would be unable to distinguish between real estate owned and unowned by the contracting owner. Similarly, § 52-133(6) refers to the "apportionment" of construction liens,[35] which provides further support for the conclusion that the term "contracting owner's" is used only to identify the geographic or spatial extent of the real estate to which a construction lien attaches.

Moreover, S&H and RIP's reading of § 52-133 ignores § 52-147, which governs the recording requirements of a contractor's lien. Among other things, § 52-147 provides that a recorded lien needs to state the "real estate subject to the lien"[36] and the "name of the person against whose interest in the real estate a lien is claimed."[37] But § 52-147(2) plainly refutes S&H and RIP's argument, as it provides: "The name given in the lien in accordance with the requirement of subdivision (1)(b) of this section may be the name of the contracting owner *or the name of the record holder of the contracting owner's interest at the time of recording the lien*." (Emphasis supplied.)

[6] Section 52-147(2) evinces that § 52-133 does not contemplate or include any temporal limitation on ownership of the property to which a lien may attach, as S&H and RIP

---

[34] See *Tilt-Up Concrete v. Star City/Federal, supra* note 24.

[35] See, also, § 52-133(5).

[36] § 52-147(1)(a).

[37] § 52-147(1)(b).

contend. To the contrary, it establishes that although the geographic or spatial extent of a construction lien may be limited under § 52-133, the real estate subject to construction liens is ultimately determined by the contracting owner's "contract . . . for the improvement of the real estate."[38]

Furthermore, although the Legislature did not adopt article 1 of the USLTA, article 1 provides general definitions[39] that apply to article 5. As mentioned above, the NCLA is an almost verbatim version of article 5 of the USLTA. Relevant to reading § 52-133 is the USLTA's definition of "real estate":

> "Real estate" means an estate or interest in, over, or under land, including minerals, structures, fixtures, and other things that by custom, usage, or law pass with a conveyance of land though not described or mentioned in the contract of sale or instrument of conveyance and, if appropriate to the context, the land in which the interest is claimed. [The term] includes rents [and] the interest of a landlord or tenant . . . .[40]

We note that when the National Conference of Commissioners on Uniform State Laws carved out article 5 of the USLTA into the Uniform Construction Lien Act in 1987, it included this definition of "real estate" within the general definitions section equivalent to § 52-127.[41]

Reading § 52-133 in light of this definition, there is no question that the "contracting owner's real estate" was established at the time the contract to improve the real estate was entered into. Under § 52-131(1), "[a] person who furnishes services or materials pursuant to a real estate improvement contract has a construction lien . . . to secure the payment of

---

[38] § 52-127(3).

[39] Unif. Simplifications of Land Transfers Act, *supra* note 23, § 1-201, 14 U.L.A. at 258.

[40] *Id*., § 1-201(15), 14 U.L.A. at 259-60.

[41] See, also, Unif. Construction Lien Act § 102(16), 7 (pt. III) 10-11 (2002).

his or her contract price," and § 52-131(2) goes on to provide that "[a] lien arises . . . only if the claimant records a lien within the time specified by section 52-137." The time specified by § 52-137(1) is "after entering into the contract under which the lien arises and not later than [120] days after his or her final furnishing of services or materials."

[7] Under these provisions, contractors who furnish services or materials have a construction lien, and the lien arises out of the improvement contract—not from the recording of the lien. By operation of the NCLA, a construction lien is automatically created whenever a contractor furnishes services or materials and originates from the contracting owner's entering into the improvement contract, even though it has not yet attached to the real estate and is not yet enforceable.[42]

There is nothing in the NCLA that prevents a contractor's lien from attaching to the real estate improved or directly benefited after a notice of commencement has lapsed, by either the running of its duration or its termination. To the contrary, § 52-137(3) specifically provides for the attachment of a construction lien after the lapse of the last notice of commencement covering the improvement.

Likewise, the corresponding comment in the USLTA states that "'[a]ttachment' . . . is a priority concept," and "the time of attachment is the claimant's priority date against third parties, such as judgment creditors or holders of security interests."[43] The limitation on relation back following a lapsed notice of commencement "provides persons who deal with the land a mechanism for assuring themselves that no construction claimant can later come in and take priority over their interest."[44] Therefore, contravening S&H and RIP's argument,

---

[42] See, also, § 52-126.

[43] Unif. Simplification of Land Transfers Act, *supra* note 23, § 5-207, comment 2, 14 U.L.A. at 335.

[44] *Id*., comment 6, 14 U.L.A. at 335.

the NCLA does not contain any provision that failing to obtain priority prevents a construction lien from attaching or automatically extinguishes the lien.

In addition, under § 52-139, "a construction lien has priority over adverse claims against the real estate as if the construction-lien claimant were a purchaser for value without knowledge who had recorded at the time his or her lien attached," except as to (1) subsequent advances "made under a [construction] security agreement recorded before the construction lien attached," if particular requirements are met, and (2) if the construction lien was not recorded at the time a protected party records a title.[45]

Consequently, the ability of the contracting owner's interest to be subject to future construction liens passes with a conveyance of the interest. In this manner, the NCLA did not change the fact that any nonprotected party purchasing property within the time a contractor is allowed to perfect the lien under the act takes title subject to any future construction lien.[46] The law continues to serve as notice that such a lien may be filed.[47] To read the NCLA otherwise would completely remove the protection given to contractors by the Legislature and negate the rationale behind the creation of construction liens.

There is no dispute that at the time RIP purchased S&H's interest in the subject property, the notice of commencement was recorded and its duration was set to expire on June 11, 2019. Nor is there a dispute that in addition to constructive notice, RIP had actual notice of the notice of commencement,

---

[45] See *Lincoln Lumber Co. v. Lancaster*, 260 Neb. 585, 618 N.W.2d 676 (2000). See, also, *Henry & Coatsworth Co. v. Fisherdick, supra* note 18; Unif. Simplification of Land Transfers Act, *supra* note 23, §§ 3-202, 3-204, and 3-205, 14 U.L.A. at 281, 283, and 284.

[46] See, *Goodwin v. Cunningham, supra* note 14; *Bohn Sash & Door Co. v. Case, supra* note 14; *Doolittle & Gordon v. Plenz, supra* note 14.

[47] See *Doolittle & Gordon v. Plenz, supra* note 14.

as well as actual notice that S&H had entered into an improvement contract with ICMS. It is also undisputed that none of the NCLA provisions pertaining to protected parties apply in this case.

Thus, when S&H entered into the improvement contract with ICMS, S&H's interest in the real estate being improved or directly benefited or described in the notice of commencement became encumbered by the future interest of any contractors who later furnished services or materials to attach a construction lien by recording the lien within 120 days of the final furnishing of services or materials. It is this interest that S&H conveyed to RIP.[48]

The NCLA provides owners various options to avoid a construction lien from attaching to the real estate, such as procuring a surety bond[49] or obtaining a written waiver of construction lien rights of a potential claimant,[50] as well as methods for releasing the real estate from liens.[51] However, it does not provide for a recorded conveyance before the termination or expiration of a notice of commencement to extinguish construction liens that have not yet attached. We find no merit in S&H and RIP's argument that RIP's fee interest has priority over the contractors' liens.

Because we conclude that the contractors' liens attached to the real estate, we do not consider the contractors' cross-appeal, since the contractors represented at oral argument that the result would be the same. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[52]

---

[48] See, also, *Midlands Rental & Mach. v. Christensen Ltd., supra* note 30.

[49] See §§ 52-141 and 52-150.

[50] See § 52-144.

[51] See §§ 51-142 and 52-151.

[52] *Swicord v. Police Stds. Adv. Council*, 314 Neb. 816, 993 N.W.2d 327 (2023).

## CONCLUSION

The NCLA provides that construction liens attach to the contracting owner's interest. Because RIP acquired S&H's interest, the contractors' liens attached to the subject property. Hence, we affirm the judgment of the district court.

AFFIRMED.

PAPIK, J., not participating.